THE STATE OF KANSAS V. O. PFEFFERLE.

1. INTOXICATING LIQUOR; *Admissible Evidence.* Under an information charging the unlawful sale of intoxicating liquors, there was proof that the defendant sold a beverage called "phœnix," which stimulated and intoxicated those who drank it. *Held,* That the testimony that the defendant had a barrel of whisky on tap in his place of business tended to support the charge, and was admissible.

2. DEFENDANT, *How Treated as Witness.* Where a defendant in a criminal case takes the witness stand to testify in his own behalf, he assumes the character of a witness and is entitled to the same privileges, and subject to the same tests, and to be contradicted, discredited or impeached, the same as any other witness.

3. CROSS-EXAMINATION, *Extent of.* The extent to which a witness may be cross-examined on matters irrelevant and collateral to the main issue, with a view of impairing his credibility, depends upon the appearance and conduct of the witness, and all the circumstances of the case, and necessarily rests in the sound discretion of the trial court; and only where there has been a clear abuse of that discretion will error lie.

4. FORMER CONVICTION; *Admissible Evidence.* A co-defendant who voluntarily became a witness, and has not appealed, was asked by the state on cross-examination if he had not recently been tried and convicted several times for the unlawful sale of intoxicating liquors, and over objection gave an affirmative answer. *Held,* To be no error.

5. ——— *Unnecessary Instruction.* Where the only sales of liquor charged in the information were those made within the present year, and there was no proof of sales except of those made during the same year, it was unnecessary for the court to instruct the jury that they could only consider such sales as were made within two years preceding the filing of the information.

6. ——— *Instruction, not Asked.* A party who desires an instruction upon some particular question not included in the general charge, should request the presiding judge to give the same; but where no such request is made, and the case is fairly presented to the jury, he cannot afterward complain that the instruction was not given.

*Appeal from Lyon District Court.*

PROSECUTION for a violation of the prohibitory liquor law. The defendant, *Pfefferle,* and another, jointly charged in an information containing five counts, were jointly tried at the

June Term, 1886, and were found guilty on all the counts. *Pfefferle* was sentenced on each count to pay a fine of $100, to be imprisoned for thirty days in the county jail, and to pay the costs of the prosecution, taxed at $213.25. He appeals. The material facts are stated in the opinion.

*Wood & Mackey*, for appellant.

*J. W. Feighan*, county attorney, and *J. Jay Buck*, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The information in this case contained five counts, in each of which it was charged that O. Pfefferle and August Gutekunst sold intoxicating liquors at stated times during the year 1886, without having a permit to do so. They were jointly tried, and were both found guilty on each count, but Pfefferle only has appealed. Testimony was received, over the objection of the defendants, that a portion of a barrel of whisky was found in the cellar of the house in which they were doing business. It is claimed that the testimony was irrelevant, and did not tend to support the issue in the case, which was concerning sales of a drink called "phœnix," and not of whisky. We entertain no doubt that the testimony was admissible. The defendants were openly engaged in the sales of beverages, one of which was termed "phœnix." There was no analysis of this beverage, and whether whisky was one of the ingredients is not clearly shown. Witnesses did testify that "phœnix" was stimulating; some that it tasted, smelled and looked like beer; others, that they became drunk by the use of it; and the defendant admitted that it contained some alchohol. The charge was the sale of intoxicating liquors, and if the beverage sold was intoxicating, the mere fact that it was called "phœnix" will not change the rules of evidence, nor relieve the defendant from the consequences of its unlawful sale. The state elected to stand upon the sale of intoxicating liquors, and not upon the sale of "phœnix," as defendant

1. Intoxicating liquor; admissible evidence.

argued.   The evidence is amply sufficient to show that the
beverage sold was an intoxicating one, and the fact that the
defendant had in his place of business a barrel of whisky on
tap tended in some degree to sustain the charge, and in con-
nection with the other evidence was sufficient to sustain a
verdict.

The defendant Gutekunst voluntarily became a witness in
behalf of Pfefferle and himself, and upon cross-examination
he was asked if he was not an old saloon keeper, and if he

*4. Former con-
viction; ad-
missible evi-
dence.*

had not been tried and convicted in that court
several times for the sale of liquor.   Other ques-
tions of like import were asked, and the witness,
over the objection of the defendant, admitted that he had
been engaged in the sale of liquor, and had recently been tried
and convicted for its unlawful sale.   The admission of this
evidence is the principal error complained of.   By taking the

*2. Defendant,
how treated
as witness.*

witness stand, Gutekunst changed his *status*, for
the time being, from defendant to witness, and
was entitled to the same privileges and subject to
the same treatment, and to be contradicted, discredited and
impeached, the same as any other witness.   But if a different
rule applies to the defendant who becomes a witness, as some
authorities seem to hold, it would not avail the appellant, as
the defendant Gutekunst has not appealed and is not com-
plaining, and therefore stands in the same relation to the
appellant as any other witness.   Although there is some di-
versity of judicial opinion concerning how far a witness may
be cross-examined upon matters not relevant to the issue,
with a view of discrediting him, yet we think the limits of
cross-examination for such purpose rest largely in the dis-
cretion of the court; and there is abundant authority for
allowing the questions asked in this case.   Mr. Wharton, in
discussing this question, says that —

    " In this country there has been some hesitation in permit-
ting a question, the answer to which not merely imputes dis-
grace, but touches on matters of record; but the tendency
now is, if the question be given for the purpose of honestly

discrediting a witness, to require an answer." (Wharton's Crim. Ev., § 474.) ·

Stephens, in art. 129 of his Digest of the Law of Evidence, in speaking of what are lawful questions on cross-examination, says:

"When a witness is cross-examined, he may be asked any questions which tend — first, to test his accuracy, veracity, or credibility; or second, to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except in the case provided in article 120, viz., when the answer might expose him to a criminal charge or penalty."

In *Wroe v. The State*, 20 Ohio St. 460, the witness for the defendant was asked on cross-examination, "Were you not discharged or compelled to resign from the police force of the city of Dayton?" and also, "Are you not now under indictment for murder in the second degree in this court?" And another witness for the defendant was asked if he had not been indicted for assault and battery in that court, and pleaded guilty. The supreme court held that the questions were allowable under the latitude of cross-examination; and stated in its opinion that—

"It is difficult to lay down any precise rule fixing the limits to which a witness may be cross-examined on matters not relevant to the issue. This must in a great measure rest in the sound discretion of the court trying the cause. Such questions may well be allowed when there is reason to believe it will tend to the ends of justice; but they ought to be excluded when the disparaging course of the examination seems unjust to the witness, and uncalled for by the circumstances of the case."

In a later case in that state, where the defendant was on trial for murder in the first degree, and having offered himself as a witness, was asked on cross-examination if he had not previously been indicted for assault with intent to kill, and pleaded guilty to the same, and if he had not frequently been arrested in that county on charges of assault and battery, objections to these questions were overruled, and the supreme

court held that it was within the discretion of the court to allow the questions for the purpose of judging of the character and credit of the witness from his own admissions, and that it did not appear that the discretion had been abused. (*Hanoff v. The State*, 37 Ohio St. 178.)

In *Brandon v. The People*, 42 N. Y. 265, the defendant became a witness in his own behalf, and on cross-examination he was asked: "Have you ever been arrested before for theft?" The counsel for the defendant objected to the question on the ground that the prosecuting attorney had no right to attack the character of the prisoner, she not having put her character in issue. The objection was overruled, and the court of appeals held the question proper for the purpose of impairing the credibility of the witness, saying that—

"It has been the practice of the courts of this state from a very early period to permit questions of this character to be put to a witness, and for the purpose indicated. Its abuse is guarded against in two modes: first, by the privilege of the witness to decline to answer any question which may disgrace him or may tend to charge him as a criminal; second, by the power of the court of its own motion to prohibit an unreasonable or oppressive cross-examination."

The supreme court of Michigan considered the propriety of such testimony in a case where the defendant was sworn as a witness in his own behalf and controverted the plaintiff's case. On cross-examination he was allowed, against objection, to be asked whether he was ever confined in a state prison. The court held the objection was not tenable, saying that—

"It has always been held that within reasonable limits a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of the power. But within this discretion we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility, and it is certain that proof of punishment in a state prison may be an important fact for this purpose. And it is not very easy to conceive why this knowledge may not be as properly

derived from the witness as from other sources. He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than truth will warrant. There can with him be no mistakes of identity. If there are extenuating circumstances, no one else can so readily recall them. We think the case comes within the well-established rules of cross-examination, and that the few authorities which seem to doubt it have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian." ( *Wilbur v. Flood,* 16 Mich. 40.)

In *Clemens v. Conrad,* 19 Mich. 170, a witness was required to answer whether he had not been indicted and convicted of a criminal offense. The objection was there made, as it is in this case, that the testimony involved matters of record, and was for that reason objectionable; but Judge Cooley, speaking for the court, said:

" We think the reasons for requiring the record evidence of a conviction have very little application to a case where the party convicted is himself upon the stand, and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent. We prefer the early English rule upon the subject: *Priddle's Case,* Leach C. L. 382; *King v. Edwards,* 4 T. R. 440; and for the reasons which were stated in *Wilbur v. Flood.*"

Running in the same line are the following additional authorities: *La Beau v. The People,* 34 N. Y. 223; *The State v. Bacon,* 9 Pac. Rep. 393; *Commonwealth v. Bonner,* 97 Mass. 587; *Rex v. Clarke,* 2 Starkie Rep. 214; *Yewing's Case,* 2 Camp. Rep. 638; *Rex v. Pitcher,* 1 Car. & P. 86; *Great Western Turnpike Co. v. Loomis,* 32 N.Y. 127; *Driscoll v. People,* 47 Mich. 413; *Hamilton v. People,* 29 id. 183; *The State v. Garrett,* 1 Busbee's Law (N. C.) 357; *Storm v. United States,* 94 U. S.76; *Gutterson v. Morse,* 58 N. H. 165; *The State v. Ward,* 49 Conn. 429; *Commonwealth v.*

*Lyden*, 113 Mass. 452. These authorities show that for the purpose of impairing his credibility, a witness may be cross-examined as to specific facts tending to disgrace or degrade him, although such facts are irrelevant and collateral to the main issue. The range of cross-examination and the extent to which such questions should be allowed, depend upon the appearance and conduct of the witness and all the circumstances of the case, and necessarily must be regulated by a sound judicial discretion. It is only where there has been an abuse of the exercise of this discretion by the court resulting to the prejudice of the party complaining, that error will lie. We cannot say that the cross-examination went beyond the proper limits in this case, or that the court abused its discretion in allowing the questions objected to.

3. Cross-examination, extent of.

Complaint is made that while Gutekunst was upon the witness stand, records of the convictions of the witness in that court were read to the jury. If the records read were the convictions which had been admitted by the witness, no harm was done; and in no event can we say that what was read was prejudicial, as the records are not included in the bill of exceptions, and we are not apprised of what they contain.

The instructions are criticised because the court failed to instruct the jury that they could only consider sales made within two years preceding the filing of the information; and it is claimed that the instructions were not as full in some other respects as the evidence and nature of the case demanded. On the first question it may be stated that the information was filed in 1886, the sales were alleged to have been made during the same year, and the proof given upon the charge was confined to the sales made during the same year, and hence there was no necessity to instruct the jury upon the statute of limitations.

5. Unnecessary instruction.

In regard to the alleged omission of the court to instruct upon certain phases of the case, we remark that the charge fairly presented the case to the jury, and as the appellant failed to request other or different instruc-

6. Instruction not asked.

tions, as he might have done, he cannot now complain. (*Douglass v. Geiler*, 32 Kas. 499.)

The judgment of the district court will be affirmed.

All the Justices concurring.