The State v. Peterson.

————————

THE STATE OF KANSAS v. ELOPH PETERSON.

1. JUROR — *Opinion, Not Formed or Expressed.* The evidence in this case does not prove that a certain juror had, before the trial, formed or expressed any opinion with reference to the guilt of the defendant.

2. JURY — *Questioning Instructions — Judgment, Not Reversed.* In a criminal prosecution where the only misconduct of the jury was that after they had retired for deliberation and some time prior to their agreeing upon a verdict, some one or more of the jurors questioned the correctness of the instructions of the court, stating that they were too favorable to the defendant, and afterward the defendant was convicted and sentenced, *held*, that the judgment of the court below will not be reversed for such misconduct.

3. LARCENY — *Circumstantial Evidence, Properly Admitted.* In a criminal prosecution for larceny where the prosecution has to rely wholly upon circumstantial evidence, it is not error to prove the acts and

accompanying declarations of a third person for the purpose of showing that the larceny was actually committed, and that such third person was one of the guilty persons, where such acts and declarations do not tend in the least to implicate the defendant in the commission of the offense.

4. ———— *No Error.* Where the court refuses instructions as asked for, but gives all that were proper to be given in its general charge, *held,* not error.

5. INSTRUCTIONS — *Rule.* As a general rule, where the court properly instructs the jury, except that it omits some matter which might properly be given, no available error is committed, unless the court has been properly requested to instruct with reference to such matter.

*Appeal from Saline District Court.*

PROSECUTION for grand larceny. From a conviction and sentence at the November Term, 1886, the defendant *Peterson* appeals. The material facts appear in the opinion.

*J. G. Mohler,* for appellant.

*S. B. Bradford,* attorney general, and *Joseph Moore,* county attorney, for The State; *W. P. Quinby,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution in the district court of Saline county, in which the defendant Eloph Peterson was charged with the crime of grand larceny in the stealing of 34 head of cattle, the property of John H. Prescott. The offense was committed, if at all, about June 8, 1886. A trial was had before the court and a jury in December, 1886, and the defendant was found guilty and sentenced to imprisonment in the penitentiary for the term of five years. He now appeals to this court. He alleges for error, as follows:

"1st. The overruling of his motion for a new trial; 2d, the overruling of his motion in arrest of judgment."

The grounds relied upon for a new trial, and which are now insisted upon in this court, are as follows:

"1. Misconduct of the jury.

"2. Preadjudication on the part of the juror W. C. Fore.

"3. Error in the admission of evidence.

"4. Refusal of instructions asked by the defendant.

"5. Misconduct of counsel for the prosecution, comprising the 11th and 12th grounds alleged in the motion.

"6. Verdict contrary to the law, as given by the court.

"7. Verdict contrary to the evidence, under the instructions of the court.

"8. Verdict contrary to the law.

"9. Verdict not sustained by the evidence.

"10. For insufficiency of instructions of the court, comprising the 14th ground in the motion."

The first question properly arising in this case is, whether the juror W. C. Fore had prior to the trial formed or expressed any opinion in the case with reference to the guilt of the defendant. The affidavits of Charles J. McVittie, Ann McVittie and Hannah McVittie were introduced in evidence by the defendant on the hearing of the motion for a new trial, to prove that the juror Fore had so formed and expressed such an opinion. On the other side, the affidavits of W. C. Fore, W. D. Mulkey, Charles O. Wheaton, B. L. Swain, O. B. Tubbs, and Bursley Sargent, were introduced. In the light of all the evidence, and particularly that of the six last-named persons, the most charitable thing that can be said with reference to the three McVitties and their affidavits is, that they were mistaken and their affidavits the result of misapprehension. The affidavits introduced by the prosecution were full and circumstantial, and Fore swore positively and unequivocally, and his affidavit is corroborated by the other affidavits, that the matters and things set forth in the affidavits of the McVitties, and tending to show that Fore had either formed or expressed any opinion in the case prior to the trial, are not true. The affidavits of the McVitties state that Fore prior to the trial expressed the opinion that the defendant was guilty, but evidently the court below did not believe them, and we do not.

It has recently been said by the supreme court of Illinois as follows:

"It is a dangerous practice to allow verdicts to be set aside upon *ex parte* affidavits as to what jurors are claimed to have

said before they were summoned to act as jurymen. The par-
ties making such affidavits submit to no cross-ex-

1. Juror—opin-
ion,notformed
or expressed. amination, and the correctness of their statement
is subject to no test whatever." (*The Anarchists'
Case*, 12 N. E. Rep. 867, 992, 993; *Hughes v. The People*, 116
Ill. 331, 337, 338; *The State v. Brooks*, 5 S. W. Rep. 258, 271,
272.)

Upon this point we think the decision of the court below is
correct.

The next point to be considered is the alleged misconduct of
the jury. In order to prove such misconduct, the defendant
read in evidence on the hearing of the motion for a new trial,
the affidavits of L. M. Tuttle, C. J. Frederickson, L. W.
Cooper, and J. Wardell. The only supposed misconduct of
the jury is shown by the following affidavits, to wit:

L. M. Tuttle, in his affidavit, states as follows:

"Some of the jury requested the affiant to call the judge
and bring him before them, as they wanted to know whether
he meant what he said in his instructions. The bailiff informed
the jurors that he would not do anything of the kind. Some
of the jurors then said that the judge could not have meant
what he seemed to say in his last instruction, and if he did, it
was not law, as an accessory after the fact was just as guilty as
a principal; that the law was, that a receiver of stolen prop-
erty is just as guilty as the thief; and that if the defendant
knew that a crime had been committed, and afterward aided
or assisted the perpetrator in any way, he was just as guilty
as the perpetrator."

L. W. Cooper and J. Wardell, in their affidavits, state as
follows:

"Affiants further say, that among other jurors they heard
Mr. Rose, they think, who was on the jury, state as above, and
also in substance that he had cattle and expected to have cattle
next year, and that no one's cattle would be saved if the de-
fendant was acquitted on this evidence."

The instruction referred to reads as follows:

"The jury under the charge against the defendant in this
case cannot find him guilty of being an accessory after the fact,
and if the jury in this case find from the evidence that the de-
fendant did not counsel, aid or abet in the actual commission

of the offense, but was only cognizant of the offense and partic- ipated therein after its commission, they will acquit the defend- ant."

.The defendant was not prosecuted upon the theory that he was a mere accessory *after* the fact, but was prosecuted upon the theory that he was a principal in the first degree, though possibly he may have been guilty only as an accessory *before* the fact; and in this state "any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal." (Crim. Code, § 115.) The above affidavits are very indefinite. Only one of them mentions any particular juror, and that is "Mr. Rose, *they think.*" Of course Mr. Rose, as "they think," was, or if not he then the unknown jurors mentioned in the affidavits were, guilty of misconduct in questioning the cor- rectness of the instruction given them by the court; but we cannot say, nor is it shown, that the jury when they took the final vote upon the guilt or innocence of the defendant, vio- lated their duty and their oaths by finding the defendant guilty upon any other theory than the one upon which he was prose- cuted, and the one which the evidence and the law, as given to them by the court, justified. No pretense is made that any unwarranted attempt was made by anyone to influence the jury in the remotest degree, except such as was made in open court, and such as the defendant could object to, and could take ex- ceptions to, and all presumptions are in favor of the correct- ness of the verdict of the jury. ` It must be presumed that after this misconduct on the part of Mr. Rose or some un- known juror or jurors, that all the jury carefully considered the case and rendered their verdict according to the law as given to them by the court, and according to the

2. Jury — ques- tioning in- structions — judgment, not reversed.

evidence. It must also be remembered that the court below, who saw the jurors, the witnesses, and the defendant, approved the verdict of the jury; and we do not think that the verdict should now be disturbed, or that the judgment of the court below should be reversed, because of said misconduct of the jury.

The third point made by the defendant is as follows:

"Error in the admission of evidence. The state, over the objection of the defendant, was permitted to prove the acts and declarations of one Antone Peterson, done and said in the absence of the defendant, and without any proof of a conspiracy or concert of action between said Antone and the defendant. Most of this testimony also was as to the acts and declarations of the said Antone after the commission of the offense. On this we remark that the ruling of the court permitting this testimony was violative of the rules of evidence, contrary to common sense, justice and decency, and could not have been otherwise than very prejudicial to the rights of the defendant."

The defendant refers to the record from page 21 to page 54. We have searched the record, and we find no errors within those pages. It is true that the prosecution proved many acts and some declarations of Antone Peterson, who is the brother of the defendant, but the evidence was competent. No person but the guilty parties witnessed the larceny, and therefore the prosecution could prove the larceny only by circumstantial evidence. The evidence complained of, together with other evidence, was introduced to show that the larceny was actually committed, and that Antone Peterson was one of the guilty parties, and was not intended to show, nor did it tend to show, the defendant's connection with the offense. The evidence complained of shows that Antone Peterson left home about 1 o'clock in the afternoon of June 8, 1886, riding a certain horse; that the larceny was committed on the night of that day; that on the next day, June 9, he shipped the stolen cattle from Chico, in Saline county, to Kansas City, Missouri; that on June 10, 1886, he sold the cattle to Irwin, Allen & Co., giving his name to them as C. J. Carlson, but as they did not know Carlson (really, Antone Peterson), they paid him by merely giving him a credit for the amount, $1,700, in the McPherson bank at McPherson, Kansas; that about June 11, 1886, he called for the money at the McPherson bank, but the bank having some fears, and he not pressing

3. Larceny— circumstantial evidence, properly admitted.

14 — 38 KAS.

payment, did not pay him on that day. On June 16, 1886, he called again for the money and drew $1,250 thereof, leaving $450 remaining in the bank. In some of these transactions, and connected with them, it was shown what Antone Peterson said, but what was said was in all cases connected with the transactions themselves and constituted a part of the *res gestœ;* and not one word was said or done by Antone Peterson, so far as is shown, that tended in the least to implicate the present defendant in the commission of the offense charged against him. The prosecution relied upon other evidence to show the defendant's guilty connection with the offense, which evidence shows among others the following facts: On the night of the larceny the defendant was out all night, or nearly so, and at one time was within two or three miles of the place where the cattle were stolen. Of course the prosecution claims he was there. On the next morning after the larceny was committed, and "just sun-up," he was seen riding his own horse and leading his brother's (Antone's) horse in the opposite direction from Chico, and about nine or ten miles from Chico. Both horses were sweating, and both had bridles and saddles on them. On the morning of June 12, 1886, the defendant sent a telegraphic dispatch from Bavaria, in Saline county, to Irwin, Allen & Co., Kansas City, Missouri, which, omitting the date, etc., reads as follows: "Has C. J. Carlson been there? Why don't he come home?— E. P. PETERSON." And on the same day he received an answer thereto by telegraph, which omitting date, etc., reads as follows:

"E. P. Peterson, Bavaria, Kansas, sold two cars cattle on 10th for Carlson. Placed money in McPherson bank. Did not know the man in charge. Said he was Carlson. Left yards 4 o'clock Thursday.    IRWIN, ALLEN & Co."

The Thursday mentioned was June 10, 1886. Of course Antone Peterson could not alone have stolen the cattle, and driven them to Chico; and the evidence tends to prove that it was the defendant who assisted him in doing so. The defendant must have known that Antone Peterson was at Kan-

sas City, Missouri, under the assumed name of C. J. Carlson. It does not appear that Antone Peterson has ever been seen in Saline county since the cattle were stolen and taken to Kansas City, Missouri, and it is almost certain that he has not been there since June 30, 1886, when this prosecution was commenced.

The fourth point made by the defendant is, that the court below erred in refusing to give instructions. Now all that was proper to be given in the instructions refused was given by the court in its general charge, and hence there is no sufficient ground upon which to claim error. The defendant was not prosecuted upon any theory of a conspiracy that would make him liable for the acts or declarations of others, done or said in his absence, but was prosecuted upon the theory that he himself assisted in the larceny, and was guilty because of his own acts, and as a principal.

4. No error.

The next point made by the counsel for the defendant, is misconduct of counsel for the prosecution. This needs no comment.

The defendant has grouped his 6th, 7th, 8th and 9th grounds for reversal, and discusses them together, but we do not think that any of them requires comment. They are all untenable.

The tenth and last point made by the defendant is, that the instructions given by the court below to the jury are not sufficient, for the reason that nothing was said with reference to an *alibi*, or the good character of the defendant. Now the evidence introduced hardly called for any instructions upon these subjects, and yet the court might very properly have given them. But no such instructions were asked for by the defendant, and hence the court did not commit any reversible error by its failure to give them. (*The State v. Pfefferle*, 36 Kas. 96; *The State v. Brooks*, 5 S. W. Rep. 257, 275, 276; *Rauck v. The State*, 11 N. E. Rep. 450, 452.) As a general rule, where the court properly instructs the jury, except that it omits some matter which might properly be given, no available error is committed, unless the court has

5. Instructions— rule.

been properly requested to instruct with reference to such matter.

We think no error requiring a reversal of the judgment of the court below has been committed, and therefore the judgment will be affirmed.

All the Justices concurring.