## THE STATE OF KANSAS v. HENRY PAGE.

No. 16,085.

### SYLLABUS BY THE COURT.

MURDER—*Burden of Proof—Self-defense—Instructions.* In a murder case, where there is some evidence which tends to show a killing in self-defense and that previous threats had been made by the deceased against the defendant, but the defendant makes no request for special instructions and the court instructs the jury as to the burden of proof and in general terms as to the law of self-defense, it is not error to fail to expand the instructions on those subjects so as to apply them to the facts which the defendant claims the evidence shows.

Appeal from Wyandotte district court; J. McCABE MOORE, judge. Opinion filed June 5, 1909. Affirmed.

*Fred S. Jackson,* attorney-general, and *Joseph Taggart,* county attorney, for The State.

*Daniel J. Maher,* and *Jacob S. Detwiler,* for the appellant.

The opinion of the court was delivered by ,

PORTER, J.: The appellant was charged with murder in the first degree. He was found guilty of murder in the second degree and sentenced to a term in the penitentiary of not less than ten nor more than twelve years.

At the time of the homicide the appellant and one Mary Wilson had been living together in a house at the foot of State street, on the river bank, in Kansas City. About thirty feet distant was a house occupied by Frank Doyle, the deceased. On the 31st day of May, 1908, at about dusk, the appellant returned from his work. At this time Mary Wilson was at the house of Frank Doyle. She had the key to her house with her. The appellant, being unable to enter the house where he lived, went to the house where the deceased lived to inquire for her. In the house at this time were

Frank Doyle, William Poynter, Mary Wilson, Ida Pierce, and Julia Duffy. It was a one-story house, with the door opening to the west. The appellant knocked at this door and it was opened by Mary Wilson. The evidence of the state is, in substance, that at this time Frank Doyle was sitting in a chair on the east side of the room, at a distance of about twelve feet from the door. In the northwest corner of the room, about ten feet from where he was sitting, was a table, upon which the supper dishes were standing. Doyle was sitting in a peaceful and contented attitude, his legs crossed, and smoking a pipe. When the door was opened the appellant requested that Mary Wilson come home or give him the key to the house. She replied: "I'll come after while, but I am not ready just yet." Appellant stepped inside of the door, said "I am tired of being bulldozed," and produced a pistol and at once commenced shooting at Doyle. He shot five times. When the first shot was fired Doyle was sitting in the chair and had made no movement and had not spoken. The shots were fired in quick succession. After the second shot the deceased rose and fell to the floor, where he died without speaking. The post-mortem examination showed that a bullet passed through his body from left to right, producing the wound that caused his death, and that there were two bullet-wounds in his arm.

The appellant testified for himself, and there was testimony given by Mary Wilson which tended to corroborate it, that at the time appellant asked for the key Doyle said "What the hell do you care whether she goes home or not?" and that he started toward the kitchen table, picking up a large butcher-knife, and assumed a threatening attitude toward the appellant.

It is urged that the evidence is not sufficient to sustain the verdict, but the testimony of Ida Pierce, Julia Duffy and William Poynter was sufficient to support every contention made by the state.

It is claimed that the court erred in overruling an objection to a question put to appellant on cross-examination as to whether Mary Wilson, who had been living with him for several years as his wife, was white or colored, or partly colored. It is claimed that the ruling was prejudicial. The record shows that in appearance Mary Wilson is a white woman, and that Ida Pierce and William Poynter are both white persons. All were witnesses before the jury. Doyle, the deceased, was a negro, and the appellant is a negro. It seems impossible that the question and answer could have prejudiced him.

Complaint is made that the trial court failed to instruct the jury fully upon the law of self-defense; that the jury should have been instructed whether or not the appellant was bound to prove his plea of self-defense. The court instructed the jury as to the burden of proof, and stated fairly though in general terms the law as to self-defense. It was not reversible error to fail to expand the instructions or to apply them to the peculiar facts in the case, inasmuch as no instructions were asked by the appellant. (*The State v. Pfefferle,* 36 Kan. 90, 96; *The State v. Peterson,* 38 Kan. 204; *The State v. Rook,* 42 Kan. 419; *The State v. Sorter,* 52 Kan. 531, 545.)

The same may be said of the failure to instruct particularly with reference to previous threats made by deceased. In one instruction the jury were told that if the circumstances were sufficient to raise in the mind of the appellant a belief that the supposed assailant intended to do him bodily harm he had a right to stand his ground and use such force or means within his power as reasonably seemed to him at that moment to be necessary for his protection, and in another they were instructed that if the affray was brought on by the deliberate, wrongful act of the appellant the plea of self-defense was futile. It is argued in this connection that there was no evidence on the part of the state

which tended to show that the appellant at the time he went to the house knew that Doyle was there. But the evidence is that Doyle had been living there for a long time, claiming it as his home. There was some evidence offered by the state tending to show that appellant was jealous of attentions paid to Mary Wilson by the deceased. His own testimony showed that they were not on good terms, and that deceased had threatened him with violence on different occasions.

We have been unable to discover any error in the record affecting the substantial rights of the appellant, and therefore the judgment is affirmed.