## R. COLEMAN v. STATE.

No. A-196.    Opinion Filed October 28, 1911.

(118 Pac. 594.)

1.    PERJURY—Materiality of Testimony—Questions of Law or Fact —Harmless Error. (a) In order to constitute perjury, it is not necessary that the matter sworn to should be directly and immediately material, but it is sufficient if it is so connected with the matter at issue as to have a legitimate tendency to prove or disprove some fact that is material by giving weight or probability to or detracting from testimony of a witness to such material fact.

(b) Perjury may be assigned upon false statements affecting the credibility of a witness whose testimony was material to the main issue. For facts sustaining a charge for perjury under this head, see opinion.

(c) Upon a trial for perjury, the degree of the materiality of the testimony upon which it is based is of no importance. Any false statement made by a witness which detracts from or adds weight and force to the testimony of any witness upon matters that are directly material thereby becomes material itself and constitutes perjury.

(d) As a general rule the materiality of testimony is a question of law for the court; but cases may arise where this materiality depends upon disputed facts, and it then becomes a mixed question of law and fact, and should be submitted to the jury under proper instructions.

(e) Even in cases where the materiality of evidence is not a mixed question of law and fact, but is purely a question of law which should be decided by the court, yet, if the court erroneously submits the materiality of such testimony to the jury and the verdict is right, the defendant could not possibly be injured thereby, and the error will be harmless, and not ground for reversal.

(f) It is the settled doctrine of this court that no man can be heard to complain of the commission of an error upon his trial, unless he can reasonably show by the record that he has suffered injury thereby.

(g) It is not necessary for this court to know that an error committed in the trial of a cause did not injure the appellant before we can affirm his conviction, but the conviction should be affirmed unless from the record we have reason to believe that such error has deprived the appellant of some substantial right and thereby worked to his injury.

(h) For an explanation and defense of the ground work and foundation of the doctrine of harmless error, see opinion.

(i) This court conceives it to be its duty to give to the people of Oklahoma as nearly as it can a system of criminal jurisprudence based alone upon justice and supported by reason, which will secure to every man, be he poor or rich, beggar or millionaire, full protection in his rights, and also secure to the people at large due execution of the criminal laws of the state.

2. TRIAL—Instructions—Character of Accused. (a) For an instruction upon the subject of the character of appellant which was requested and properly refused by the court, see opinion.

(b) For an instruction upon the subject of character which was properly given by the trial court, see opinion.

3. PERJURY — Criminal Law — Punishment — Harmless Error. (a) Where the court in its instructions submits to the jury a smaller penalty for the offense than that prescribed by law, the appellant cannot be heard to complain, and such instruction will constitute harmless error, and will not be ground for reversal.

(b) Proceedings before a grand jury may constitute part of the proceedings of a court of justice, but they do not constitute proceedings in a court of justice.

(c) Perjury committed in proceedings before a grand jury should be punished as prescribed in the third subdivision of section 2184, Snyder's Comp. Laws, Okla. 1909.

4. PERJURY—Indictment—Instructions. (a) For reasons why all officers charged with the enforcement of the penal laws of the state should exercise the utmost diligence in prosecuting those who commit perjury, even in the smallest cases, see opinion.

(b) For an approved indictment for perjury, see statement of case.

(c) For instructions on the subject of perjury held to be good as against the objections urged to them, see statement of case.

(Syllabus by the Court.)

*Appeal from District Court, Bryan County; D. A. Richardson, Judge.*

R. Coleman was convicted of perjury, and appeals. Affirmed.

On the 25th day of May, 1908, the grand jury of Bryan county returned into the district court the following indictment:

"State of Oklahoma, Bryan County—ss.: In the district court of the Sixth judicial district of the state of Oklahoma, and held in and for Bryan county, in said state. State of Oklahoma v. R. Coleman. Indictment. At the May term, a term of the district court of the Sixth judicial district of the state of Oklahoma, held in and for Bryan county, in the state of Oklahoma, at the city of Durant, and begun on the 18th day of May in the year of our Lord one thousand, nine hundred and eight, the jurors of the grand jury of said county, good and lawful men, then and there returned, tried, impaneled, sworn, and charged according to law, to diligently inquire into, and true presentment make, of all public offenses against the said state of Oklahoma, committed or triable within said county, upon their said oaths, in the name and by the authority of said state of Oklahoma, do present and find that in said county of Bryan, in said state of Oklahoma, on the 19th day of May in the year of our Lord one thousand, nine hundred and eight, the grand jury in and for Bryan county, state of Oklahoma, duly selected, impanelel, sworn and charged in and for the May term, 1908, of the district court of Bryan county, Oklahoma, was in lawful session in the grand jury room in the courthouse at Durant in Bryan county, Oklahoma; that one R. L. Crudup was then and there the lawful foreman of said grand jury, duly appointed by the said district court, and said R. L. Crudup as such foreman of said grand jury then and there had lawful authority to administer oaths to all witnesses appearing before the said grand jury; that the said grand jury was then and there investigating a charge against Oscar Eskew, Will Rose, Vernon Bell, Walter Rogers, George Hinson, Vernon Badgett, and Ed Goosby for the crime of gaming by playing at craps for money in Bryan county, Oklahoma, for the purpose of determining whether or not an indictment should be returned by the said grand jury against said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby, charging them with the crime of unlawfully gaming by playing at craps for money, and that the said grand

jury then and there had the lawful power, authority, and juris-diction to inquire into said offense and return an indictment therefor; that said R. Coleman was then and there called before said grand jury, and appeared before said grand jury, to testify concerning said matter, and the said R. Coleman then and there took an oath which was administered to the said R. Coleman by the said R. L. Crudup as the foreman of the said grand jury, he, the said R. L. Crudup, then and there having the lawful authority to administer said oath, in substance that the testimony which he, the said R. Coleman, should give before said grand jury would be the truth, the whole truth, and nothing but the truth, and thereupon said R. Coleman testified before said grand jury as under oath, and while so testifying before said grand jury as under oath the said R. Coleman did wilfully, corruptly, feloniously, falsely, and contrary to such oath state to the said grand jury, in substance, that on the night when H. N. Roberts came upon the said R. Coleman, Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon, Bell, and Ed Goosby in a storm cellar at or near Colbert, Bryan county, Okla-homa, he did not state to H. N. Roberts that he was in there trying to win a piece of money gambling, and that he did not state that he was ready to pay his fine for gambling, and that the said R. Coleman stated, further, than said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were not in there gambling, when in truth and in fact the said R. Coleman did state to H. N. Rob-erts, in substance at the same time, that he was trying to win a piece of money gambling, and that he, the said R. Coleman, did state that he was ready to pay his fine, and when in truth and in fact the said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were in there gambling; that said statements of said R. Coleman then and there made to said grand jury were false, and the said R. Coleman then and there knew the same to be false, and said statements of said R. Coleman so made to said grand jury were then and there material. And so the grand jurors aforesaid on their oaths aforesaid do say that he, the said R. Coleman, did commit wilful and corrupt perjury, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Okla-homa."

On the 22d day of January, 1909, this cause came on to

be tried. Upon the trial of the cause the court instructed the jury as follows:

"Gentlemen of the jury, the indictment in this case charges the defendant, R. Coleman, with the offense of perjury alleged to have been committed before the grand jury of Bryan county on the 19th day of May, 1908. It is alleged in the indictment that the grand jury of said county was then and there in lawful session, and that R. L. Crudup was then and there its lawful foreman; that said grand jury then and there had under investigation a charge against Oscar Eskew, Will Rose, Vernon Bell, Walter Rogers, George Hinson, Vernon Badgett, and Ed Goosby for the offense of gaming by playing at craps for money in Bryan county, Okla.; that said grand jury then and there had lawful power and authority to inquire into the commission of said offense for the purpose of determining whether or not an indictment should be returned against said persons charging them with the commission of said offense; that this defendant appeared before said grand jury to testify concerning said matter, and that this defendant then and there took an oath which was administered to him by the said R. L. Crudup as the foreman of said grand jury, in substance, that the testimony which he, the said R. Coleman, should give before said grand jury would be the truth, the whole truth, and nothing but the truth, and that said R. L. Crudup, as such foreman of said grand jury, then and there had lawful power and authority to administer said oath. The indictment further alleges that thereupon the said defendant testified before said grand jury under oath, and, while so testifying before said grand jury as under oath, the said defendant, R. Coleman, did wilfully, corruptly, feloniously, falsely and contrary to such oath state to the said grand jury, in substance, that on the night when H. N. Roberts came upon the said R. Coleman, Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby in a storm cellar near Colbert, Bryan county, Okla., he, the said defendant, did not state to H. N. Roberts that he was in there trying to win a piece of money gambling, and that the said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were not in there gambling. The indictment further alleges that, in truth and in fact, the said R. Coleman did state to H. N. Roberts, in substance, at the said time that he was in there trying to win a piece of money gambling, and that in truth and in fact the said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon

Bell, and Ed Goosby and the said R. Coleman were in there gambling. The indictment further alleges that the said statements of the said R. Coleman then and there made to said grand jury were false, and that the said R. Coleman then and there knew the same to be false, and that said statements of said R. Coleman so made to said grand jury were then and there material. To this indictment the defendant has entered a plea of not guilty, and the question of his guilt or innocence is for this jury to determine from the evidence in the case, and the instructions which the court shall now give you.

"No. 1. The statute under which this indictment is drawn reads as follows: 'Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by the law be administered, states any material matter which he knows to be false, is guilty of perjury.' Our statute further provides that it is no defense in a prosecution for perjury that the accused did not know the materiality of the false statment made by him; or that it did not in fact affect the proceedings in or for which it was made. It is sufficient that it was material, and might have been used to affect such proceeding.

"No. 2. Before the jury can convict the defendant in this case, they must find from the evidence beyond a reasonable doubt the following facts: First, that the district court of Bryan county, Okla., was in lawful session on said 19th day of May, 1908; second, that the grand jury in and for the May term, 1908, of the district court of Bryan county, Okla., was in lawful session; third, that one R. L. Crudup was then and there the lawful foreman of said grand jury; fourth, that the said grand jury was then and there investigating a charge against Oscar Eskew, Will Rose, Vernon Bell, Walter Rogers, George Hinson, Vernon Badgett, and Ed Goosby for the crime of gaming by playing at craps for money in Bryan county, Okla.; fifth, that the said grand jury then and there had the lawful power, authority, and jurisdiction to inquire into said offense and return an indictment therefor; sixth, that the defendant, R. Coleman, on or about the 19th day of May, 1908, appeared before said grand jury to testify concerning the charge against the said persons above named; seventh, that the said defendant, R. Coleman, then and there took an oath which was administered to him by the said R. L. Crudup, as the foreman of said grand jury, in substance, that the testimony which he, the said R. Coleman, would

give before said grand jury would be the truth, the whole truth, and nothing but the truth; eighth, that the said R. L. Crudup then and there had lawful power and authority to administer said oath; ninth, that the said defendant, R. Coleman, while so testifying before said grand jury as under oath, did state to said grand jury, in substance, that on the night when H. N. Roberts came upon the said R. Coleman, Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby in a stormhouse at or near Colbert, Bryan county, Okla., he, the said R. Coleman, did not state to H. N. Roberts that he was in there trying to win a piece of money gambling; that said statements so made to said grand jury were false; that said defendant did make said statement to said H. N. Roberts on said night; that said defendant then and there well knew that said statement so made by him to said grand jury was false, and it must be shown that said statement was then and there material to the matters under investigation by said grand jury. Should you find all the foregoing facts to have been proven by the evidence in this case beyond a reasonable doubt, it would be your duty to convict the defendant. Should you fail to so find, then you could not convict the defendant upon the allegations contained in the indictment, to the effect that the said defendant did wilfully and contrary to his said oath testify to said grand jury, in substance, that on the occasion in question he, the defendant, was in there trying to win a piece of money gambling.

"No. 3. Now, as to the matters proved, the journal of the district court of Bryan county, Okla., has been introduced in this case, and it has been shown by said journal that the district court of Bryan County, Okla., was in lawful session on said 19th day of May, 1908; second, that the grand jury in and for Bryan county, state of Oklahoma, in and for the May term, 1908, of the district court of Bryan county, Okla., was in lawful session; and, third, that one R. L. Crudup was then and there the lawful foreman of said grand jury, and these three facts may be taken by the jury as having been proved beyond a reasonable doubt. The court will also instruct the jury that the said grand jury then and there had lawful power, authority, and jurisdiction to inquire into the offense of gaming by playing at craps for money in Bryan county, Okla., and that the said R. L. Crudup, as the foreman of said grand jury, then and there had lawful power and authority to administer an oath to the said R. Coleman, if he appeared before said grand jury as a witness. So the additional matters which the state must prove beyond a rea-

sonable doubt are these: First, that the said grand jury was then and there investigating a charge against Oscar Eskew, Will Rose, Vernon Bell, Walter Rogers, George Hinson, Vernon Badgett, and Ed Goosby for the crime of gaming by playing at craps for money in Bryan county, Okla.; second, that the defendant, R. Coleman, on or about the 19th day of May, 1908, appeared before said grand jury to testify concerning the charge against the persons above named; third, that the defendant, R. Coleman, did then and there take an oath, which was administered to him by the said R. L. Crudup as the foreman of said grand jury, in substance, that the testimony which he, the said R. Coleman, should give before the said grand jury, would be the truth, the whole truth, and nothing but the truth; fourth, the state must prove beyond a reasonable doubt either that the said R. Coleman while so testifying before said grand jury as under oath, did state to said grand jury in substance that on the night when H. N. Roberts came upon the said R. Coleman, Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby in a stormhouse at or near Colbert, Bryan county, Okla., he, the said R. Coleman, did not state to H. N. Roberts that he was in there trying to win a piece of money gambling, and that said statement so made to said grand jury was false, and that said defendant did make said statement to the said H. N. Roberts on said occasion, and that said defendant then and there knew that said statement so made by him to said grand jury was false, and that said statement was then and there material to the matters under investigation by the said grand jury, or else the state must prove beyond a reasonable doubt that said defendant R. Coleman, while so testifying before said grand jury as under oath, did state to said grand jury, in substance, that the said Oscar Eskew, Will Rose, Vernon, Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were not in there gambling, meaning in said stormhouse, and that, in truth and in fact, the said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were in said stormhouse gambling, and that said defendant then and there well knew that said parties were in said stormhouse gambling, and that said defendant made said statement wilfully and contrary to his said oath, knowing the same to be false, and that said statement was then and there material to the matters then and there under investigation by the said grand jury. Should you find the foregoing facts to have been proved by the evidence in this case beyond a reasonable doubt, you should convict; otherwise you should acquit.

"No. 4. If the jury believe from the evidence in this case beyond a reasonable doubt that the defendant, R. Coleman, on the occasion in question, while the grand jury was investigating the charge above mentioned against the persons above named, after having been sworn by R. L. Crudup, foreman of said grand jury, to tell the truth, the whole truth, and nothing but the truth, did wilfully and corruptly and contrary to his said oath make either of the statements above mentioned, and that said statements were then and there false, and that the defendant then and there well knew the same to be false, and that said statements were then and there material to the matters under investigation by the said grand jury, then and in that event, it would be your duty to find the defendant guilty as charged. Should you fail to so find, it would be your duty to acquit the defendant.

"No. 5. As to the materiality of the false statements alleged to have been made by the defendant, Coleman, the true test of whether the alleged false statements of the defendant made before said grand jury were material is this: Were said statements of such a character that, if true, they should properly influence the action of the grand jury in determining whether or not an indictment should be returned against the parties under investigation. In other words if this defendant did state to H. N. Roberts at the time and place and under the circumstances in question, in substance, that he was in there trying to win a piece of money gambling, would that be evidence tending to show that the parties under investigation were or were not engaged in gaming in said storm cellar at said time? If it would, then said evidence was material. If it would not, then said evidence was not material. If said evidence was not material, then it makes no difference whether the same was true or false, the jury should find the defendant not guilty so far as that alleged statement is concerned.

"No. 6. The court will instruct the jury as a matter of law that if they believe from the evidence in this case beyond a reasonable doubt that the grand jury on the occasion in question was investigating a charge against Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby on a charge of gambling by playing at craps for money in said storm cellar at Colbert, in Bryan county, Okla., and that the said defendant testified before said grand jury, in substance, that said persons were not in said storm cellar gambling, then this said alleged statement was material. If, however, the jury should find all of the foregoing matters to have been proved

by the evidence in this case beyond a reasonable doubt, except the allegation that the said defendant, R. Coleman, while so testifying before said grand jury, did swear that he did not state to H. N. Roberts on the occasion in question that he was in there trying to win a piece of money gambling, and the said statement was then and there false, and was well known to be so by the defendant, and was wilfully and corruptly made by the defendant, and that the same was then and there material, but if the jury should find from the evidence in this case beyond a reasonable doubt that the said defendant, R. Coleman, while so testifying before said grand jury as under oath, did state to said grand jury in substance that the said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were not in there gambling, meaning in said stormhouse, and that in truth and in fact the said Oscar Eskew, Will Rose, Vernon Badgett, Walter Rogers, George Hinson, Vernon Bell, and Ed Goosby were in said stormhouse gambling, and that said defendant then and there well knew that said parties were in said stormhouse gambling, and that said defendant made said statement wilfully and contrary to his said oath, and knowing the same to be false when he so made it, and that said statement was then and there material to the matters under investigation by said grand jury, then it would be your duty to find the defendant guilty as charged. Should you fail to so find beyond a reasonable doubt, you should acquit the defendant.

"No. 7. The state is not required to prove that the defendant testified before the grand jury in the precise words alleged in the indictment. Upon that point it is sufficient if the state proves beyond a reasonable doubt that the defendant in testifying before the grand jury made the statements in language, effect, and meaning substantially as they are alleged in the indictment.

"No. 8. Should you find the defendant guilty, you should assess his punishment at imprisonment for some period of time not exceeding five years.

"No. 9. If the jury believe from the evidence that prior to the occasion in question the defendant's reputation in the community in which he lived for truth and veracity was good, then the jury may consider that fact in determining the question of the defendant's guilt or innocence of this charge. But, if upon a consideration of all the evidence in the case, you believe beyond a reasonable doubt that the defendant is guilty as charged, then his previous good reputation would neither justify nor excuse the offense.

"No. 10. The defendant is presumed to be innocent and this presumption relates to every essential element of the crime with which he is charged, and abides with him until it is overcome by legal evidence which establishes his guilt to the satisfaction of your minds beyond a reasonable doubt.

"No. 11. The burden rests upon the state to prove the defendant's guilt beyond a reasonable doubt. By the term, 'reasonable doubt,' however, is not meant a mere misgiving of the imagination, a fanciful conjecture, or a suggestion of sympathy for the defendant; but a reasonable doubt is an actual doubt arising from the evidence or the want of evidence in the case. The state is not required to prove the defendant's guilt to an absolute or a mathematical certainty, or beyond any possible or imaginary doubt, for there is nothing relating to human affairs or depending upon moral evidence that is not open to some possible or imaginary doubt. If however, after considering, comparing, and weighing all the evidence in this case, your minds are left in that condition that you cannot say that you feel an abiding conviction to a moral certainty of the defendant's guilt, then you would have a reasonable doubt, and it would be your duty to acquit the defendant. On the other hand, if the evidence in this case establishes in your minds the guilt of the defendant to a reasonable and moral certainty, such a certainty as convinces and directs the understanding and satisfies the reason and judgment of you who are bound to act conscientiously upon it, then you would have no reasonable doubt, and it would be your duty to convict the defendant.

"No. 12. The jury are the sole judges of the facts proved in this case. You are also the sole judges of the credibility of the witnesses who have testified herein, and the weight and value to be given to their testimony. In determining the credit you will give to any witness, and the weight and value you will attach to his evidence, you should take into consideration the conduct and demeanor of the witness on the stand, his manner of testifying, his means of knowing the facts about which he testifies, the reasonableness or unreasonableness of his statements, and his interest in the result of the trial. All those matters being taken into account by you, together with all the other facts and circumstances before you, it is your province to give to each witness such credit, and the testimony of each witness such weight and value as you deem it entitled to have. In determining the facts proved in this case, you should bring to your assistance

in considering the evidence your common sense, and your knowledge of human nature and your experience in human affairs.

"No. 13. If you believe from the evidence that any witness who has testified in this case has wilfully and knowingly sworn falsely to any material fact, then you may, if you think proper, reject the whole of the testimony of such witness, or you may give such weight to the testimony of such witness on other points as you may deem it entitled to have. You are the sole judges of the credibility of the witnesses and the weight and value to be given to their testimony.

"No. 14. The jury are further instructed that it will require the concurrence of the full panel of the jury to render a verdict in this case, and that you must not arrive at your verdict by lot or by any manner or species of chance. You must be controlled in arriving at your verdict by the law as stated in these instructions and by the evidence you have heard from the witnesses."

Appellant was found guilty by the jury, and his punishment was assessed at imprisonment in the penitentiary for the period of one year. Defendant appealed. Affirmed.

*Robert Crockett* and *Charles E. McPherren,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). There are 15 assignments of error in this case, but in the brief of counsel for appellant they are grouped, discussed, and considered as three propositions, which are as follows:

"First. Was the alleged communication with H. N. Roberts, which the state contends defendant denied as a witness before the grand jury, and which serves as one of the foundations upon which the indictment in this case rests, material to investigation of the charges of gaming against Oscar Eskew, Will Rose, Vernon Bell, Walter Rogers, George Hinson, Vernon Badgett, and Ed Goosby by grand jury, and to which investigation the defendant or appellant herein was not a party? Was not the submission of the question as to the materiality of the said alleged statement error?

"Second. Was not the refusal of the court to give defendant's or appellant's special request for instruction No. 1, as to the consideration of good reputation of the appellant, and the

giving of instruction No. 9 as to good reputation, error on the part of the court?

"Third.    Will the verdict of the jury assessing a punishment against the appellant unauthorized by the law support a sentence and judgment against the appellant?"

We will consider these questions in the order presented.

First.  At the May term, 1908, in the district court of Bryan county, the grand jury was investigating charges of gambling against Oscar Eskew, Will Rose, Vernon Bell, Walter Rogers, George Hinson, Vernon Badgett, and Ed Goosby, and appellant was summoned before said grand jury to testify in this investigation.  He stated, in substance, that about 11 o'clock on the night in question he heard some talking in a dug-out, and he went down to see what was going on there.  He said that Oscar Eskew, Will Rose, Vernon Bell, and Ed Goosby were in the cellar. He said that he did not know what they were doing, but did not see any dice or money, and that no craps was being played there; that the officers came to where they were; and that he, the witness, did not say to H. N. Roberts that he was shooting craps trying to win a piece of money, and did not say, "I am ready to pay my fine."  It was proven upon the trial of the cause that at the time inquired about by the grand jury the parties above named were in a cellar or stormhouse at or near Colbert, in Bryan county, Okla., and that they were there engaged in a game of craps, and that upon being arrested by H. N. Roberts and others, the defendant stated to the said Roberts that the parties had been engaged in gambling; that he was there shooting craps, trying to win a piece of money; and that the defendant stated that he wanted to pay a fine that night.

The contention of counsel for appellant is that the statements made by appellant were not material to the question being investigated by the grand jury, and that, even if they were material, this should have been determined by the trial court, and that it was error for the trial court to submit the materiality of these statements to the jury.  The question at issue before the grand jury was as to whether or not certain parties at a certain time and place were engaged in violating the law by shooting

craps. The appellant appeared before the grand jury, and admitted that he was present at the time and place under inquiry, but testified positively that he did not see any dice or money, and that no one was playing craps there. This testimony was evidently offered for the purpose of preventing an indictment being found by the grand jury. As to whether or not the statements of the defendant given before the grand jury were true was material to the issues involved upon the investigation. He was then asked if he had not stated to H. N. Roberts immediately after his arrest that the parties in the cellar or dug-out, just before the arrest, had been engaged in gambling, and that he was there shooting craps trying to win a piece of money, and that if he, the defendant, had not at that time stated to said Roberts that he wanted to pay a fine for gambling. This he denied. If he had admitted having made these statements, it would have entirely destroyed the effect of his previous statements to the effect that he did not see any dice or money in the dug-out, and that no games were being played there by the parties whose conduct was under investigation. The question as to whether or not any particular statement is material in a prosecution for perjury depends upon the nature of the proceeding in which it is made and the matter that is at issue. If the statement assigned as perjury could not have influenced the grand jury in determining the issue before them, it was not material, but, if the statement was made for the purpose of influencing the grand jury and was such that it might have had this effect, then it was material. It is not necessary that the matter sworn to be directly and immediately material in order to constitute the offense of perjury. It is sufficient if it is so connected with the matter at issue as to have a legitimate tendency to prove or disprove some fact that is material by giving weight or probability to or detracting from the testimony of a witness thereto. This is sufficient, and makes the testimony material. It has therefore been held that perjury may be assigned upon false statements affecting a collateral issue as to the credibility of a witness; this being material to the main issue. This was directly passed upon by the Supreme

Court of Kansas in the case of *State v. Park,* 57 Kan. 432, 46 Pac. 713.

The Supreme Court of that state there laid down the true rule as follows:

"To constitute perjury, the false statements must be material to the subject under consideration, or such as would tend to influence the determination of the issues to be decided. The question whether the defendant had been previously prosecuted and punished for committing grand larceny in Missouri, although in a certain sense collateral to the question on trial, can hardly be treated as immaterial. In the trial wherein false statements are alleged to have been made, Park voluntarily became a witness in his own behalf, and he was therefore subject to the same rules on cross-examination as any other witness. He having assumed the position of a witness, it was competent for the state upon cross-examination to test his veracity and credibility. It is well settled in this state that a defendant may be asked questions disclosing his past life and conduct; and the state may even go to the extent of inquiring if he has ever been convicted of the same offense as that for which he is upon trial. *State v. Pfefferle,* 36 Kan. 90 [12 Pac. 406]; *State v. Probasco,* 46 Kan. 310 [26 Pac. 749]; *State v. Wells,* 54 Kan. 161 [37 Pac. 1005]. Not only was the statement of the witness therefore competent, but it had an important bearing upon the credit to be given to his whole testimony; and it is generally held to be perjury to swear falsely to anything affecting the credibility of the witness himself or the credibility of another witness in the case. In *Wood v. People,* 59 N. Y. 117, it is held that 'it is not necessary that the false statement tends directly to prove the issue in order to sustain an indictment for perjury. If circumstantially material, or if it tends to support and give credit to the witness in respect to the main fact, it is perjury.' The Texas Court of Appeals has held that perjury may be predicated on a false answer of a witness that he had never been convicted of a felony, as such answer affects his credibility, and is therefore material to the issue. *Williams v. State,* 28 Tex. App. 301 [12 S. W. 1103]. See, also, *United States v. Landsberg* [C. C.] 23 Fed. 585; *Washington v. State,* 22 Tex. App. 26 [3 S. W. 228]; 2 Bishop's New Crim. Law, § 1032; Clark's Crim. Law of Canada, 389; Tiffany's Crim. Law, 850."

The degree of materiality is of no importance. Any false statement made by a witness which detracts from or adds weight

and force to testimony as to matters that are directly material, thereby becomes material itself and may constitute perjury. Section 195, 3 Greenleaf on Evi., is as follows:

"As to the materiality of the matter to which the prisoner testified, it must appear either to have been directly pertinent to the issue or point in question, or tending to increase or diminish the damages, or to induce the judge or jury to give readier credit to the substantial part of the evidence. But the degree of materiality is of no importance; for, if it tends to prove the matter in hand, it is enough, though it be but circumstantial. Thus, falsehood in the statement of collateral matter, not of substance, such as the day in an action of trespass, or the kind of staff with which an assault was made, or the color of his clothes, or the like, may or may not be criminal, according as they may tend to give weight and force to other and material circumstances, or to give additional credit to the testimony of the witness himself or of some other witness in the cause. And therefore every question upon the cross-examination of a witness is said to be material. In the answer to a bill in equity matters not responsive to the bill may be material. But where the bill prays discovery of a parol agreement, which is void by the statute of frauds, and which is denied in the answer, this distinction has been taken: That, where the statute is pleaded or expressly claimed as a bar, the denial of the fact is immaterial, and therefore no perjury, but that where the statute is not set up, but the agreement is incidentally charged, as, for example, in a bill for relief, the fact is material, and perjury may be assigned upon the denial."

On these authorities and upon reason we cannot agree with the statement of counsel for appellant that the testimony pointed out under the first proposition in his brief was not material.

Counsel next take the position that, if this testimony was material, it was error for the trial court to submit its materiality to the jury. We agree with counsel that as a general rule the materiality of testimony is a question of law for the court, but cases may arise where this materiality depends upon disputed facts, and then becomes a mixed question of law and fact, to be submitted to the jury under proper instructions. We are sustained in these views by one of the greatest modern writers on

criminal law.    Section 1039, 2 Bishop's New Crim. Law, is as follows:

"The materiality of the testimony is a question of law, not of fact.    But, like any other question of law, it may be so mingled with fact that it should be submitted under due instructions to the jury."

This paragraph has been cited with approval in the case of *Young v. People,* 134 Ill. 37, 24 N. E. 1070, and also the case of *Washington v. State,* 23 Tex. App. 336, 5 S. W. 119.    We can well see the justice of this rule as applied to the facts of the case now before us.    Here the materiality of this testimony depended upon the testimony of other witnesses, which, if true, would make this testimony material.    We therefore think that it was proper for the trial court to submit to the jury upon the entire testimony in the case the question of the materiality of this testimony.    But there is another view which is also a conclusive answer to the question taken by counsel for appellant. Suppose we concede that the court did err in submitting the question of the materiality of this testimony to the jury, what possible harm was thereby done to appellant?    It simply gave him an additional opportunity of escaping punishment, for the jury might have erroneously decided that the evidence was not material.    The doctrine of this court is that no man can be heard to complain of the commission of an error upon his trial, unless he can reasonably show by the record that he has suffered injury on account of such error.    To secure the reversal of a conviction in this court, the burden is on the appellant to show both error and injury therefrom.    In other words, before error committed on a trial will be ground for reversal, it must reasonably appear from an inspection of the entire record that such error deprived appellant of some substantial right, and thereby worked to his injury.    This doctrine has been vigorously assailed, and as a matter of respect for the able counsel in this case we will re-examine the ground upon which it rests.    We are entirely willing and anxious to correct any errors we may have made, and will thank the person who points them out for so doing.

We are also willing to reply to any fair criticism of any position which we may occupy. Where error has been committed in the trial court, counsel for the defense always say: "How do you know that the defendant was not injured by the commission of this error?" This is the shibboleth of the defense in every case upon this question. If it be true that it is the duty of this court to know that an error has not injured an appellant, before we can affirm a conviction in which it occurred, then this question entirely demolishes our position, and it is our duty to recede therefrom.

Before answering this question, let us ask and answer one or two similar questions which involve the same principle, and then we will see more clearly the far-reaching consequences involved in the question presented. We will suppose a case where the testimony is all in favor of the state, and is direct as to the guilt of the appellant, could not counsel for appellant with equal force say, "How do you know that the witnesses for the state did not all perjure themselves?" Is it not true that Naboth, the Jezreelite, was convicted and stoned to death at the instance of Jezebel upon suborned and perjured testimony? And is it not true that Stephen, first martyr to the Christian religion, was condemned and stoned to death on perjured testimony? How do you know that the testimony against the defendant in this case is not false? Then, again, suppose a case where the testimony was conflicting and presented two issues, one of guilt and one of innocence, which justified a jury either in convicting or acquitting a defendant, could not counsel for the defendant with equal force ask, "How do you know that the jury was not actuated by improper motives in convicting this defendant, and were not influenced by passion or prejudice in arriving at the verdict?" It is at once seen that, if such questions as these are to be answered and· acted upon by this court, they would soon put an end to the enforcement of criminal law in Oklahoma. What is the answer to all such questions? Law is not based upon fixed and unchangeable facts, and therefore is not, and cannot become, an exact science. It never has required mathe-

matical certainty either on the part of courts or juries. In the very nature of things, more should not be required than moral certainty of the guilt of a defendant before inflicting legal punishment, and moral certainty admits the possibility of error in every case. It is largely on this ground that the pardoning power is placed in the hands of the Governor. This is done principally to enable him to give a prisoner the benefit of any new discoveries that may be made favorable to him after his conviction. It is manifest that no one can say as a matter of knowledge that any given person is guilty of a crime for which he has been convicted. It is always possible in any case that the witnesses for the prosecution may have committed perjury or they may have been mistaken as to the facts with reference to which they have testified; and it is also always possible that jurors may have been influenced by improper motives or they may have misunderstood and misapplied the evidence in the case, and it is also always possible that in any case the appellate court may be mistaken as to the law or mistaken as to its application to the facts of the case. If knowledge was required of courts or juries, it would be impossible to have society, government, and law. Matters of knowledge relate to common-place things of life. Matters of belief relate to the sacred things of life. The most of the things we believe are spiritual. Herein lies the true distinction between brutes and human beings. The brute knows; the human being not only knows, but also believes and exercises faith. Experience shows that a man is far more apt to be right when he places his belief and faith and action upon a reasonable basis that he is apt to be right when he thinks that he is acting upon his personal knowledge. Of necessity nearly all of our acts are based upon belief, and but few of them are based upon knowledge. If we only acted on knowledge, we would not accomplish much in life. There are very few things we know for certain. No man knows as a fact that his wife loves and is faithful to him; but most men would stake their lives upon their faith in their wives. Without this faith the marital relation would not be endurable, and would soon cease to exist, and society itself would

crumble to pieces, and the world relapse into the darkness of barbarism. Our everyday experience confirms the statement of inspiration that "by faith we live, move, and have our being." The truth is that the only possible standard of action for the enforcement of law is that we must believe to the same degree of moral certainty that we act upon in matters of the gravest concern to ourselves, and, when we so believe and act, we meet the full measure of our duty.

In the trial of a criminal case the defendant is not entitled to any presumption other than that of innocence, and when a jury has found from the evidence, beyond a reasonable doubt, that he is guilty as charged, this presumption is entirely wiped out and destroyed, and the contrary presumption confronts him, viz., that his conviction was right, and the burden is then on him to show that on the trial he was deprived of some substantial right to his injury. Unless he can do this, the judgment of the lower court should be affirmed. The presumption of innocence is based upon human experience which teaches us that men do not ordinarily violate the law. The presumption that the verdict of the jury in a court of record is right is also based upon human experience. Ordinarily men sympathize with those who are falsely charged with crime, and the presumption is that the jury would not convict a man unless he was really proven guilty. This presumption is much stronger than that of the innocence of a defendant, for it is much more improbable that 12 men would do wrong than it is that one man would do wrong. In a felony case a defendant is tried by 12 jurors, in the selection of which he participates. By selecting these jurors he vouches for their intelligence, fairness, and integrity.. Which presumption should be the stronger—that the defendant is innocent or that 12 such men are mistaken or have perjured themselves? So it is seen that the presumption in favor of the verdict of the jury is not only based upon necessity, but is also supported by reason and experience. Trial judges are not selected by chance. They are either agreed upon by the defendant or selected in such manner as to settle the question of their intelli-

gence and integrity. Some appellate courts act as though it was their duty to hold that everything done in the trial court was irregular until it was proven by the state that the proceedings were strictly regular. Some of them also hold that the commission of error presumes injury to the defendant. We think the safer and better rule is to presume that everything done in a court of record is regular until the contrary is made to appear, and to place the burden upon the party complaining of the action of the trial court to show how he was injured thereby. This, as we understand it, is the groundwork and foundation of the doctrine of harmless error. If we are wrong in these views, we earnestly invite the bar of the state of Oklahoma to show us wherein we are wrong, and we will thank them for so doing. We will be glad to consider a brief filed in any case by any reputable attorney in reply to these views. This court is always ready and willing to correct any material error which it may have committed. It is our judgment that, if the doctrine of harmless error is wrong, then the enforcement of the criminal law of Oklahoma will become a farce, a mockery, and a delusion. We are not without authority supporting these views.

An instructive decision upon this subject was rendered by the Court of Criminal Appeals of Ireland in the case of *Regina v. James Courtney,* which will be found in Cox's Crim. Law Cases (English) vol. 7, p. 111. The opinion is by Chief Justice Monahan. The opinion is too long to be copied in full, but we have carefully compared the syllabus with the opinion, and find that the syllabus correctly states the law as decided. The syllabus is as follows:

"Perjury assigned on answers of the prisoner that he had not tasted any intoxicating drink, or been in a public house on a particular evening. These answers were given on an inquest held on the body of a man who had been found dead, but without any marks of violence or anything to cause suspicion of his having died from other than natural causes. *Held,* nevertheless, directly material, as the coroner was bound to inquire into all the circumstances attending death. On the trial the judge had left the question of materiality to the jury, who found the prison-

er guilty. *Held,* under these circumstances, that, whether materiality be a question for the judge or the jury, the conviction was right."

If the appellate courts of the United States would take the same view of the enforcement of law that the English courts take, there would be more respect for law and more confidence in our courts, and life and property would be as safe here as they are in England. What the United States need is more plain common-sense justice that the people can understand, and not so much regard for technicalities, which constitute only so much learned nonsense and which no man can understand, unless he be a skilled lawyer. Too much regard for technical rules sacrifices substance to form, and makes the shadows and cobwebs of antiquity more important than the enforcement of justice and the punishment of criminals. Other appellate courts may do as they please, but we are determined to decide every case submitted to us in the light of the moral atmosphere which surrounds it, and as near as possible to base our decisions upon the very truth and justice of each case. Owing to the great volume of business in our court, there are now something like 500 cases on our docket, and the constant interruptions to which we are subjected, and the further fact that we did not have a single precedent when this court was established, but were forced to reconcile two separate and conflicting systems of criminal jurisprudence, and form them into one system, we cannot give every question involved in each case that investigation and consideration which it should receive. We know that we have made mistakes, but we are correcting these mistakes as rapidly as possible. We believe it to be our duty to give to the people of Oklahoma as nearly as we can do so a system of criminal jurisprudence based alone upon justice and supported by reason, which will secure to every man, be he poor or rich, beggar or millionaire, full protection in his rights, and also secure to the people at large the due execution of the criminal laws of the state.

The Court of Criminal Appeals of Ireland in the case above cited held that while it was true that the materiality of the tes-

timony was for the court, and not for the jury, and that the trial
court should not have submitted the question of materiality of
the testimony to the jury, yet, as the verdict of the jury was
right, the conviction was affirmed. This meets with our entire
approval. So, even if we felt in this case that the trial court had
erred in submitting the question of the materiality of this testi-
mony to the jury, still, as we find from the evidence that the ver-
dict of the jury was right, we would hold that the error was
harmless. But, as heretofore stated, we think that the trial court
had the right, under the facts in this case, to submit the ma-
teriality of the testimony to the jury, as it was a mixed ques-
tion of law and fact.

Second. Upon the trial of this cause, the defendant re-
quested the court to charge the jury as follows:

"The defendant in a criminal action, who has introduced
testimony showing his previous good character, has a right to
have such testimony considered by the jury in determining wheth-
er reasonable doubt exists as to his guilt. If, from all the other
evidence in the case, the jury would be satisfied of the guilt of
the defendant, they must still determine whether or not the prev-
ious good character of the defendant, when weighed with all
the other facts and circumstances in the case, raises a reason-
able doubt as to his guilt; and, if such reasonable doubt re-
mains in the minds of the jurors, they must acquit."

It was not error for the court to refuse this instruction,
because it is not applicable to the facts and issues in this case.
The instruction requested is entirely too broad. Where a de-
fendant is being tried for perjury, it is immaterial as to what
his previous character has been except upon the issue of truth
and veracity. Under the law, although the jury may have found
that the defendant had always borne the reputation of being a
quiet, peaceable, and inoffensive citizen, yet proof of such good
character would not even tend to raise an issue in a perjury
case favorable to the defendant. The court instructed the jury
as follows:

"If the jury believes from the evidence that prior to the
occasion in question the defendant's reputation in the community
in which he lived for truth and veracity was good, then the jury

may consider that fact in determining the question of the defendant's guilt or innocence of this charge. But, if upon a consideration of all the evidence in the case you believe beyond a reasonable doubt that the defendant is guilty as charged, then his previous good reputation would neither justify nor excuse the offense."

This instruction was directly applicable to the issues in the case and was all that the defendant had a right to ask. Our views upon this subject are expressed in full in the case of *Morris v. Ter.*, 1 Okla. Cr. 617, 99 Pac. 760, 101 Pac. 111. The leading authorities on this subject are there cited and discussed. The instruction of the court given in this case is directly in harmony with the conclusions which we there reached. We therefore hold that no error was committed by the trial court in refusing to give the special instruction requested and in the instruction that was given by the court to the jury.

Third. Appellant was found guilty by the jury of having committed perjury in proceedings before the grand jury, and his punishment was assessed by the jury at imprisonment in the penitentiary for the period of one year. Section 2176, Snyder's Comp. Laws Okla. 1909, defines perjury as follows:

"Every person who having taken an oath that he will testify, declare, depose or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury."

Section 2184, Snyder's Comp. Laws Okla. 1909, prescribes the punishment for perjury as follows:

"Perjury is punishable by imprisonment in the state prison as follows: (1) When committed on the trial of an indictment for felony, by imprisonment not less than ten years nor more than twenty. (2) When committed on any other trial or proceeding in a court of justice, by imprisonment for not less than five nor more than ten years. (3) In all other cases by imprisonment not more than five years."

Counsel for appellant in their brief state their position as follows:

"It is our contention that the crime with which the appellant has been charged in this case falls within the second subdivision of the statute above quoted, and is a case of perjury, committed, if committed at all, 'on any other trial or proceeding in a court of justice,' and that consequently the punishment to be assessed therefor is imprisonment not less than 5 nor more than 10 years. We submit that perjury committed before the grand jury is perjury committed in a proceeding in a court of justice."

Suppose we concede that appellant's punishment should have been inflicted under the second subdivision of section 2184, which would have required the jury to assess his punishment at not less than 5 nor more than 10 years' imprisonment, and that the court erred in instructing the jury that they might assess his punishment under the third subdivision of this section, which provides that the punishment should not exceed five years; would this error on the part of the court be one which appellant could complain of? Here, again, appellant is confronted with the doctrine of harmless error, because, if it was an error, it did not deprive him of any right, but clearly inured to his benefit. Upon this feature of the case we are supported by the following authorities:

"Accused, who was charged with the offense of selling liquor in violation of a city ordinance, cannot complain that the penalty imposed by the police court was that prescribed by the state statute for the same offense, instead of the greater penalty prescribed by the ordinance, as he was not prejudiced thereby." (*Orme v. Commonwealth,* 55 S. W. 195, 21 Ky. Law. Rep. 1412.)

In the case of *Nichols v. State,* 127 Ind. 406, 26 N. E. 839, the court said:

"Finally, it is contended by appellants that the court erred in rendering judgment against them on .the verdict because the jury failed to assess a fine against them as part of the punishment. The verdict, with this exception, is perfect on its face. Of this objection we think it sufficient to say that the appellants should not be heard to complain of the fact that they did not receive all the punishment contemplated by the law which the jury found they had violated. In the case of *Griffith v. State,* 36 Ind. 406, it was said by this court: 'It will hardly be contended we presume that the prisoner can successfully object that

the punishment imposed was less than might legally be inflicted.'   While it is true that the jury might have imposed a fine in this case in addition to the punishment fixed by their verdict, their failure to do so was error in favor of the appellants and gives them no cause for complaint in this court."

The Supreme Court of Arkansas held:

"A sentence to a fine less than the minimum fixed by statute is an error of which the accused cannot complain; Mansfield's Dig. Ark. § 2468, providing that a judgment shall be reversed only for error to the prejudice of the accused." (*Bishop v. State* [Ark.] 14 S. W. 88.)

In *McQuoid v. People,* 8 Ill. 76, the Supreme Court of that state said:

"Properly the plaintiff should have been imprisoned as well as fined.  No imprisonment is imposed upon the plaintiff.  We consider the law upon this point as settled by this court that a defendant in a civil or criminal prosecution cannot assign for error a decision, order, or judgment of a court which is manifestly in his favor,"—citing cases.

In the case of *Covy v. State,* 4 Port. (Ala.) 186, the court said:

"The only objection that can be assigned for error on the latter motion (in arrest of judgment) is that the fine assessed by the jury was less than the law of 1826 authorized.  To this it may be replied that defendant cannot complain if the fine is less than what the law considers their just deserts.  No one can allege error in his own favor."

In the case of *Ooton v. State,* 5 Ala. 465, the court said:

"The judgment in the present case is for the fine assessed by the jury, and 30 days' imprisonment as a punishment for the offense.  * * *  The defendant cannot object to the irregularity of the judgment; for instead of injuriously affecting his legal rights, it is certainly more beneficial to him than the law authorized."

In the case of *People v. Bauer,* 37 Hun (N. Y.) 407, the court said:

"It had jurisdiction of the person of the defendant and of the subject-matter, and the sentence conforms to the provisions of the statute.  The only objection being that the length of term

is insufficient, there was therefore no attempt to exert power beyond its jurisdiction. It did not exceed the time authorized by the statute."

In the case of *People v. Rouse*, 72 Mich. 59, 40 N. W. 57, it was held:

"It is no ground of error that a sentence is less than it might have been, so long as it does not involve a different kind of punishment than that allowed by law. * * * In *Wattingham v. State*, 37 Tenn. (5 Sneed) 64, the respondent was convicted of larceny, and sentenced to two years' imprisonment. The minimum fixed by the statute was three years. The court held that the rule that a party cannot assign for error that which is for his own advantage applies as well to criminal cases as to civil proceedings; that the error was formal merely, and could not avail the prisoner. Other cases to this effect are the following: *Barada v. State*, 13 Mo. 94; *People v. Burridge*, 99 Mich. 343 [58 N. W. 319]; *Harmison v. City of Lewiston*, 153 Ill. 313 [38 N. E. 628, 46 Am. St. Rep. 893]; *State v. Evans*, 23 La. Ann. 525; *People v. Trainor*, 57 App. Div. 422, 68 N. Y. Supp., 263."

But is an investigation before a grand jury a "proceeding in a court of justice"? A grand jury investigation is strictly a secret *ex parte* proceeding. The accused has no notice of it, and is not allowed to be present, and no one is permitted to be there to represent him, and no one can be present during a grand jury investigation except the witness being examined and the county attorney or some one expressly authorized by law to represent him. See *Hartgraves v. State*, 5 Okla. Cr. 266, 114 Pac. 343; *State v. Maben*, 5 Okla. Cr. 581, 114 Pac. 1122. The powers of the grand jury are plenary, and, after the grand jury has been duly organized, the largest part of their legitimate functions are performed by them as a separate and independent body, acting by themselves and separate and apart from the court, and in their deliberations or actions they are not subject to the control of the court or directions from the court other than that which they may receive in the charge of the court before they proceed to enter upon their duties or by instructions subsequently given them in open court. They can properly exercise their functions without the presence of the court. In the exercise of their

powers, they cannot be interfered with or controlled by the court, but it is their duty to deliberate and to act by themselves. We are supported in these views by the following authorities:

In the case of *Commonwealth v. Bannon et al.,* 97 Mass. 218, the court said:

"It is true, as the defendant contends, that the grand jury is a constituent part or branch of the court, and that it can be organized and empowered to discharge the legal functions imposed on it only by virtue of the authority which it derives as a body of men sworn and impaneled in open court in the mode prescribed by law (Gen. Stat. c. 171, §§ 1-6), and that the exercise of their functions is limited to the time during which the term of the court at which they are summoned to attend continues. But it is also true that, after they are duly organized, the larger part of their legitimate functions is to be performed by them as a separate and independent body acting by themselves apart from the court, and that in their deliberations and actions they are subject to no control or direction other than that which they may receive in the charge of the court before they proceed to enter on their duties (Gen. Stat. c. 171, §§ 7-10), or by instructions subsequently given to them in open court. No doubt they may, if they see fit, invoke the powers of the court to assist or protect them in the performance of their duties. *Heard v. Pierce,* 8 Cush. 338 [54 Am. Dec. 757]. This is a right which appertains to the body as an 'appendage' or branch of the court, and is essential to enable it to perform its legal duties with efficiency and without interruption or molestation. But the existence of such right does not lead to the inference which the counsel for the defendant seeks to draw from it. It does not follow that the grand jury can properly exercise none of their functions without the actual presence or aid of the court, because they cannot issue process to compel the attendance of witnesses or to punish disorderly and contemptuous behavior. In all matters within the scope of their authority, on which it is their legal duty to deliberate and act by themselves, their power is plenary. Its exercise cannot be controlled or interfered with by the court. If the jury are duly summoned and impaneled, if all their proceedings are regular, and their presentments are duly made to the court, we are at a loss to see on what ground it can be plausibly maintained that any legal formality is wanting which is necessary to give validity to their action. Certainly no essential right or privilege of an accused party can be said to be in any

degree violated or infringed. No part of the proceeding would have been different, if the court had continued in actual session during the entire time while the jury were engaged in the transaction of the business before them. The temporary absence of the judge from the city and county, while the term of the court was held, can have had no possible effect on the proceedings."

In the case of *State v. Bowman,* 90 Me. 368, 38 Atl. 333, 60 Am. St. Rep. 266, the Supreme Court of Maine had the following to say:

"Another consideration should not be lost sight of. The object of an investigation by a grand jury is not only to bring the guilty to trial, but also to protect the innocent from groundless accusation. The duties of grand jurors are important and responsible. They should be entirely independent. They should be uninfluenced by any consideration except a desire to 'diligently inquire and true presentment make of all matters and things' given them in charge, according to their oaths and their consciences. If it be competent for the court to order a stenographer to be present and take stenographic notes of the testimony of witnesses, for such future use as the court might order or the law allow, it might be done in one case only during a whole session, while all other matters were investigated in the ordinary way. Should that be done, we cannot tell what influence such a discrimination might have upon the jurors. We think that in some cases it might affect their independence and impair the rights of the accused."

In the case of *Finley v. State,* 61 Ala. 201, the court said:

"If the court was correct in limiting the summoning to the bystanders in the courtroom, it has an unlimited power in this respect, and would then have unlimited power and influence in the selection of the persons who were to fill deficiencies in the panel and to serve in the capacity of grand jurors. With equal propriety, the court could have designated the particular bystanders from whom the deficiencies were to be supplied. The exercise of such a power by the court would be in violation of the spirit of all our legislation, and would convert the grand jury from a distinct, independent body, drawn and summoned by officers specially charged with that duty, into a mere dependency of the court, chosen by its absolute will. The practical results of such a power are too apparent to require discussion or statement. There is no reason for imputing to the court in this instance more than mere error; but the power exercised in the hands of a capricious or

an unscrupulous judge, would destroy the purity and independence of the grand jury, and pervert it from all the purposes of its institution. *O'Byrnes v. State* [51 Ala. 25] *supra; Portis v. State,* 23 Miss. 578; *Keitler v. State,* 4 G. Greene (Iowa) 291."

In the case of *State v. Walcott,* 21 Conn. 279, the court said in speaking of grand juries:

"Grand juries have a right to investigate offenses, and present bills of indictment against persons at large as well as those in custody or on bail. They have a right to originate charges against offenders without forewarning them of their proceedings against them."

In the case of *U. S. v. Belvin* (C. C.) 46 Fed., at page 384, the court there said:

"The function of the grand jury is not to try persons accused of crime, but merely to examine whether and what crimes have been committed, to designate the persons at whom the evidence points as criminal, and by indictment to charge such persons before the court and country as answerable for the crimes committed within the county."

In the case of *U. S. v. Kilpatrick* (D. C.) 16 Fed., at page 769, the court said:

"A grand jury is a competent part of the court, and is under its general supervision and control, and grand jurors may be indicted, or punished for contempt, for any wilful misconduct or neglect of duty; but they are independent in their action in determining questions of fact."

In the case of *People ex rel. Pickard v. Sheriff,* 11 N. Y. Civ. Proc. R., on page 183, the court there said:

"A 'grand jury' is defined by the statute to be 'a body of men, returned at stated periods from the citizens of the country, before a court of competent jurisdiction, and chosen by lot, and sworn to inquire of crimes committed or triable in the county.' Code. Cr. Proc. § 223. Note the language, 'returned before a court.' All through the chapter of the Code of Criminal Procedure devoted to the grand jury, it is recognized as a body separate and distinct from the court before which it is returned. It is no part of the court. The court can exist without it. The court of oyer and terminer is composed of a justice of the Supreme Court without an associate. The grand jury is there, in a certain sense, under the instructions of the court, for the purpose of inquiring as to crimes and making presentments to the

court. It is required after the court have advised it as to its duties to retire to a private room, and it may there stay until it is through with its inquiries or until the final adjournment of the court. The court has no control over it in regard to when and how long it may sit: The court is the adviser of the jury; the jury the assistant of the court."

Proceedings before a grand jury may constitute part of the proceedings of the district court in which the grand jury was impaneled, but it is equally clear that proceedings before a grand jury do not constitute a trial or proceeding in a court of justice, as is contemplated by the second subdivision of the statute prescribing the punishment for perjury. A trial or proceeding in a court of justice necessarily means that the parties at interest have been forewarned, and have been given notice to be present at such proceeding, and also have an opportunity to introduce testimony if necessary, and be heard by counsel in open court for the protection of their interests. The presence of the presiding judge is absolutely necessary and essential during the entire time of a trial or proceeding in a court of justice. In criminal cases the judge must have the court under his immediate control during every moment of time in which a trial or proceeding is being conducted. If he loses this control, the entire trial or proceeding is thereby rendered invalid. See *Cochran v. State,* 4 Okla. Cr. 379, 111 Pac. 974. All trials or proceedings in a court of justice are subject to review upon appeal. None of these things are necessary or possible in proceedings before a grand jury. We therefore hold that the trial court did not err in submitting the punishment in this case to the jury under the third subdivision of the statute prescribing the punishment for perjury. In other words, perjury committed in proceedings before a grand jury is not committed in a trial or proceeding in a court of justice, and can only be punished under the third subdivision of this statute.

Fourth. We do not know as a matter of fact that appellant is guilty, but we are satisfied from the testimony in the case beyond all question that merely for a purpose of protecting some of his companions and associates from the payment of a fine for

violating the gambling laws of the state appellant has committed wilful, wicked, and corrupt perjury, for which he must now serve a term in the state penitentiary. Next to the crimes of seduction and rape, perjury is the most serious offense against the laws of the state, and the most infamous in its character that can be committed, and especially the kind of perjury for the commission of which appellant now stands convicted. We can have some respect for a man, who for a real or fancied wrong enters into a fair combat in which he takes the life of his adversary. We can even sympathize with an aged widowed mother or a devoted wife, sister, or daughter, who, through love for a son, a husband, or brother, or a father, is driven to the commission of perjury to save such loved one from the hangman's noose. We can understand how perjury in cases of this kind may not indicate an utter want of moral character, but we cannot find language strong enough to express our detestation of the crime for which appellant has been convicted. The smallness of the cause for which perjury is committed is a true indication of the moral depravity of the man who commits it. The fact that the jury did not give appellant the full limit of the law is the only thing about this case worthy of criticism. We think that the smaller the inducement for perjury the greater the punishment should be. The man who will commit perjury to shield a crap shooter or a bootlegger is a most dangerous man to society. The longer he can be locked up the better it will be for the interests of public justice. From the records which we have examined in bootlegging and gambling cases, we are impressed with the idea that this kind of offense is common in this state. In fact, it appears that these cases are largely schools for perjury. The county attorneys and judges and grand and petit juries of the state cannot be too diligent in bringing such parties to justice. There is too much of a disposition to look upon perjury in these cases as something to be expected, and as being of but small importance. Men who perjure themselves in these small cases will not hesitate, if an inducement is offered, to perjure themselves in order that they may cheat the gallows of its due or consign innocence

to a felon's cell, or rob widows and orphans of their property. Perjury attacks the integrity of all legal proceedings, and thereby endangers the institutions of our country; and we again call on county attorneys and all other officers to exercise the utmost diligence in prosecuting these offenders, with the assurance that, when they are fairly tried and proven to be guilty, this court will not hesitate to do its full duty in each case. No class of offenders should be more vigorously and relentlessly prosecuted or severely punished. County attorneys are requested to urge these views upon juries in all perjury prosecutions. Let all unite in a determined effort to make perjury dangerous even in the smallest case. When this is done, there will be more respect for law and not so many miscarriages of justice in our courts.

We find no error in the record. The judgment of the lower court is therefore in all things affirmed.

DOYLE, J., concurs; ARMSTRONG, J., absent and not participating.