No. 31,794

F. M. WILLIAMS, JESSIE M. WILLIAMS, His Wife, and A. E. WATSON, *Appellees*, v. THE HANSTON STATE BANK, *Appellant*.

(36 P. 2d 84.)

Opinion
filed October 6, 1934.

*O. A. Wilson,* of Jetmore, for the appellant.

*Roscoe E. Peterson,* of Larned, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to recover $160 for delay rentals on oil and gas leases which had been secured on land belonging to F. M. Williams and Jessie M. Williams. The land, two quarter sections, had been leased to the Texas Company and the Skelly Oil Company, and the rentals for the delay in operation of the leases were $80 on each quarter section, and the delay rentals for the ensuing year did not become due until May 29, 1931. The land had been owned by Sarah J. Van Meter and was sold by her without reservations to the Williamses, and the deed of transfer was filed for record on April 23, 1931.' The delay rental on both quarter sections was sent to the Hanston State Bank by one of the lessees, the Texas Company, on May 1, 1931, and was received by the bank on May 4, 1931, the bank having been designated in the leases as the depository for such payment. Lloyd Olson was the cashier of the bank and its managing officer, and he had been the original lessee of the lands, which lease he had subsequently assigned. On May 18, 1931, the bank held a note for a considerable amount against Mrs. Van Meter, and the cashier, Olson, placed the $160 to the credit of Mrs. Van Meter on that note and retained the money. Personally Mrs. Van Meter had nothing to do with the deposit and made no directions with reference to it. It was transmitted by the oil company to be paid to the owner of the land.

It appears that there is a publication in that section of the country called the Southwest Credit Association, a publication taken by the bank, and it appeared that the issue of May 12 contained a publication of the transfer of the land by warranty deed from Mrs. Van Meter to the Williamses. Then on May 18, as we have seen, Olson made an entry applying the delay rental to the note of Mrs. Van Meter. About two weeks later Williams applied to the oil company for the money and learned that it had been sent to the depository bank about the first of the month. He then went to the bank to get it and was told by the cashier that he had not been advised to deposit the money to anyone other than Mrs. Van Meter,

and that she was owing the bank and he had taken and applied the money on that debt. When Williams requested payment from the bank, Olson replied: "I appreciate, Mr. Williams, that you should not be made the goat, that the money rightfully belongs to you," but declined to pay it to him. He stated that he had not been advised to pay the money to anyone other than Mrs. Van Meter, and that as she was owing the bank he had taken and applied it on that debt.

The demand not being paid, action was brought and the verdict of the jury and the judgment of the court were in favor of plaintiffs. The bank appeals and complains, first, of the instructions, and second, the failure to set aside special findings of the jury and the refusal to grant its motion for a new trial.

The court gave the jury instructions, three and four of which are as follows:

"The burden is upon the plaintiff in this action to prove by a preponderance of the evidence that prior to the time the defendant applied the $160 on the indebtedness due to it from Sarah J. Van Meter, the defendant had knowledge of the conveyance of said land to the plaintiffs, or had notice or knowledge of such facts as would have caused an ordinarily prudent person to have made inquiry, and that the making of such inquiry would have resulted in knowledge of the conveyance of said land by Sarah J. Van Meter to the plaintiffs. If the plaintiffs have so proven, then you should return a verdict herein for the plaintiffs in the sum of $160, but if the plaintiffs have not so proven, or if the evidence offered by the defendant is sufficient to show that it did not have such notice or knowledge, then you should return a verdict herein for the defendant.

"Under the evidence in this case, the plaintiffs were the owners of the land in question at the time the delay rentals were applied to the indebtedness of Sarah J. Van Meter to the bank, and the bank is liable to the plaintiffs therefor, in the event that the bank, prior to the time it applied such money to the indebtedness of Sarah J. Van Meter, had knowledge of the conveyance of the land to the plaintiffs, or notice of such facts as would have caused an ordinarily prudent person to make inquiry, which inquiry would have disclosed the fact that plaintiffs were the owners of the land."

The contention of the defendant is that the instructions are indefinite and misleading, and that there is a difference in payments in property and payments of money. The complaints of the instructions were not made when they were given and, in fact, not raised until this appeal was taken. No other or different instructions were requested by defendant. It was satisfied to go to the jury on the instructions given by the court without objection or offer of other instructions.

In *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648, it was said:

"A judgment will not be reversed because of complaint that the court did not properly, correctly and fully · instruct the jury, where the instructions given correctly stated the law, and no request was made for other or additional instructions." (Syl. ¶ 4.)

In *Foley v. Crawford*, 125 Kan. 252, 264 Pac. 59, it was said:

"From the abstract of the defendant it may reasonably be inferred that the instructions were in writing. The defendant had the right to see them before they were read to the jury, and could have seen them if a request had been made for permission to do so. The defendant could then have stated to the court wherein modification was desired and could have requested other or additional instructions. What the defendant desired to have in the instructions should have been made known to the court either by a request for a modification of the instructions given or by submitting to the court special instructions with the request that they be given." (p. 263.)

In *Master Sales Company v. Sytsma*, 114 Kan. 120, 217 Pac. 291, it was said:

"The instructions given were correct so far as they went, but they should have stated the rule for measuring the defendant's damages; however, the plaintiff did not request any such instruction. If he wanted such an instruction given, he should have requested it. His failure to make such request renders the error committed by the court unavailable." (p. 123.)

In *Lambert v. Rhea*, 134 Kan. 10, 4 P. 2d 419, where there was complaint of instructions given by the court, it was said:

"Although plaintiffs complain that instructions were incomplete and should have included some additional matter, they did not request or suggest any additions or modifications of those given. Plaintiffs stood by without making objections, and not asking for modifications or additions they allowed the court and defendant to understand that they were satisfied with the charge. If a party thinks an instruction is not as full as it might be he should in fairness to the court point out the lack and request the additional matter, and if he fails to do this he has no right to complain." (p. 14.)

The instructions appear to be correct so far as they pertain to the issues on which the case was tried by the parties. The failure of the defendant to object to the instructions, as given, or to suggest modifications of them, bars him from complaining that additional instructions were not given, or of those given.

Defendant contends that the special findings on which the judgment was founded are not supported by sufficient evidence, and further that the question was raised by the motion for a new trial. In that motion it is stated as a ground for a new trial, "because of

erroneous rulings or instructions of the court." As we have seen, the instructions as to other features were not available to defendant, and as to other rulings the trial court was not informed as to the grounds relied upon. The motion should have definitely pointed out the rulings of which complaint was made, and if error was committed, to correct such errors and thus avoid the necessity of an appeal.

In *Brick v. Fire Insurance Co.*, 117 Kan. 44, 230 Pac. 309, this question was considered, and it was said:

"The purpose of a motion for a new trial is to give the court an opportunity to reëxamine rulings made in the course of the trial and to correct any errors in the proceedings, so that parties may avoid the trouble and expense of having them corrected on appeal. How could the court reëxamine and correct a ruling unless the party called attention to the particular one to which objection was made and the statement of the grounds of his objection?" (p. 45.)

In the syllabus it was said:

"Errors of the trial court occurring during the trial and which constitute grounds for a new trial, to be reviewable on appeal, must have been brought to the attention of the trial court on a motion for a new trial, and if such errors are not specifically pointed out in the motion or upon the presentation of the motion, and no opportunity is given to the court to reconsider and correct such errors, they will as a general rule be regarded as waived." (¶ 2.)

As to the special findings and their support in the evidence, it may be said that the knowledge of the defendant was first placed before the jury as direct and actual knowledge that the Williamses were the owners of the land and entitled to the money paid on delay rentals for the coming year, and further, that if that was not found, that it had knowledge of such facts as would have caused an ordinarily prudent person to make such inquiries as would have resulted in such knowledge of the conveyance of the land to Williams. There was evidence that the bank was a member of the Southwest Credit Association. The cashier remembered receiving a report from that source that told of the conveyance from Van Meter to Williams, but said he did not remember when he secured it, but he named a date later than May 18, when the money was applied to the debt of Van Meter. When the cashier was asked by Williams for the money, he said he had noticed in the record reports that Williams had become the owner of the land, but he had not been advised to deposit it to the account of anyone but Van Meter. He knew of the leases and had been an owner of them, but had

assigned them to others and therefore knew of their provisions that the future delay rentals were to be paid to the owner of the land.

As to conversations with Williams, he said he did not remember the dates of the same, but did not learn of his ownership of the land until he demanded the payment of the money. In answer to the question if he knew then that Williams was the owner of the land, he replied, "I don't believe I did." On cross-examination, when he was asked if when he received the remittance of the money from the Texas Company about May 4, 1931, he knew it was for this land which had since been transferred to Williams, he said that he did. He testified further as follows:

"Q. When Mr. Williams testified you had known of this from the report, or record, that is a mistake, is it? A. I don't remember having such a conversation with him.

"Q. But you would not be sure you did not have such a conversation? A. No, I don't remember that part of the conversation."

Speaking of the reports in the Southwest Credit Association, dated May 10, 1931, he was asked if he had examined this exhibit, and he answered "yes, sir," and if he had noticed that that report contained a mention of a warranty deed from Mrs. Sarah J. Van Meter to F. M. Williams, covering the land, describing the two tracts, his answer was "yes, sir."

In most of the answers he sought to convey the idea that he had not learned of the conveyance until after the application of the money. On the testimony three special questions were asked and answered by the jury. They are as follows:

"1. Did the Hanston State Bank know on May 18, 1931, that plaintiffs Williams had a deed to land in question? A. No.

"3. If you do not find that defendant bank knew that the plaintiffs Williams had a deed to the land on May 18, 1931, then state whether or not it had knowledge of any facts which would put an ordinarily prudent person upon inquiry to ascertain whether or not plaintiffs were entitled to the oil and gas money. A. Yes.

"4. If your answer to question 3 is in the affirmative, state what fact or facts were brought to the knowledge of defendant, and by whom, that should cause it to investigate to determine the ownership of such money. A. Report of the Southwest Credit Association."

It is obvious from the answer to question one that the bank did not have direct and positive knowledge that Williams had a deed to the land, but by the answers to three and four that it had knowledge of facts which put it upon inquiry to ascertain who was entitled to the money, and that that information was sufficient to

cause it to investigate to determine the ownership of the money. The proof seems to be sufficient to sustain the findings.

Olson, the managing officer of the bank, was the original lessee in the leases and was therefore familiar with the fact that the owner was entitled to the future delay rentals. The land had been conveyed to Williams prior to April 23, 1931, the rentals were not due until May 29, 1931, and the checks mailed by the Texas Company were sent on May 1, 1931, and received on May 4, 1931, nearly a month before they were due.

Mrs. Van Meter did not deposit the money to her credit, but it was placed to her account by the bank when the remittance slips accompanying them informed the bank that they were for rentals on the particular lands in question. The bank was a subscriber or member of the Southwest Credit Association which issued a publication on May 10 which contained the description of the sale from Van Meter to Williams. The only dispute in the important facts is as to when Olson read these reports. When interviewed by Williams he stated that he had noticed by the record reports that Williams had become the owner of the land, and not that he did not know of that fact in time, but his excuse was that he had not been advised to deposit this money to any other account than that of Mrs. Van Meter. He testified that he did not remember making the statement attributed to him by Williams; but did not deny making it. The jury decided that he made it and also that it was a fact. Knowing that, he appropriated the money to the debt owed by Mrs. Van Meter to the bank. In an annotation to 13 A. L. R. 334, it is said:

. "Where the bank, although having no actual notice of the character of funds deposited with it, has knowledge of circumstances such as are regarded as sufficient to necessitate inquiry upon its part, the general rule is that the bank cannot, as against the true owner, set off such funds against the individual indebtedness of the depositor to the bank." (Citing many cases.)

A. E. Watson, to whom an undivided one-half interest was conveyed by Williams and wife on April 11, 1931, was a party to the action, and has participated in the trial and in the appeal.

Our conclusion is that the testimony is sufficient to support findings three and four, and that without authority the bank appropriated and placed the money of Williams, the owner, to the payment of Mrs. Van Meter's indebtedness to the bank.

The judgment is affirmed.