No. 31,962

Myrtle Birdsong, *Appellant,* v. Howard Meyers, *Appellee.*

(40 P. 2d 430)

Opinion filed January 26, 1935.

*Lucien B. Rutherford,* of Leavenworth, *J. M. Fisher, Frederick E. Whitten, Chet A. Keyes* and *Paul J. Parker,* all of Kansas City, Mo., for the appellant.

*Benjamin. F. Endres,* of Leavenworth, for the appellee; *Keefe O'Keefe,* of Leavenworth, of counsel.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages for personal injuries sustained by plaintiff in a collision of automobiles on a Missouri state highway about a mile east of the Kansas line.

On the night of May 27, 1933, plaintiff was a member of a party of seven persons traveling eastward on the highway. There was a beer tavern situated a short distance north of the road, and the driver of the automobile in which plaintiff was riding decided to turn in and halt at the tavern. As the automobile was turning northward to leave the highway, defendant and three companions who had been to another beer tavern further east were returning to Leavenworth in defendant's automobile. The car in which plaintiff was riding was struck by defendant's car and she was severely injured. Hence this lawsuit.

Plaintiff charged various acts of negligence against defendant—

driving while drunk; high, excessive and negligent speed; breach of various provisions of Missouri road law requiring due care, proper head lights and efficient brakes, and—

"6. The defendant saw or by the exercise of the highest degree of care could have seen plaintiff and the automobile in which she was riding in or approaching a place of imminent danger or peril, and that plaintiff and the driver thereof were unconscious, or apparently unconscious of their danger or peril in time by the exercise of the highest degree of care, and with reasonable safety to himself and those in his car, to have stopped said automobile or slackened the speed thereof, or blown his horn, or turned his automobile aside, and thereby avoided striking plaintiff and said automobile which she was in, but carelessly and negligently failed so to do."

Plaintiff also pleaded statutes and supreme court decisions of Missouri to apprise the trial court on the pertinent Missouri law, and concluded with a prayer for damages.

On behalf of defendant (a youth of 19 years) his guardian *ad litem* filed a general denial and a plea of contributory negligence.

Jury trial, verdict and judgment for defendant.

Plaintiff appeals, urging various errors, the first of which relates to a charge of corruption committed by the appellee. This is based on an affidavit by one of the youths in defendant's car, Ketter, who averred that he had been coached and intimidated into falsifying his testimony touching the speed of defendant's car as it approached the place of collision. The affiant named five or six persons who did the alleged coaching and intimidating. Each of these persons swore that the matters stated in Ketter's affidavit were gratuitous and untrue. This court has no means of divining the proper credence to be attached to controverted matters of this kind. They must be left to the unconstrained judgment and discretion of the trial court. (*Pittman Co. v. Hayes*, 98 Kan. 273, 157 Pac. 1193; *State v. Stach*, 116 Kan. 187, 226 Pac. 238.)

The next error assigned was on misconduct of the jury. This relates to some conversation of jurors touching the case overheard in the corridors of the courthouse before the cause was finally submitted to them. The incident was investigated by the court, the jurors readmonished, and no semblance of prejudice can be discerned therein.

Plaintiff complains of the suppression of two depositions. As to one of them it is not quite accurate to say it was suppressed. It was not filed in time so that "one clear day" could intervene before the commencement of the trial as the statute requires. (R. S. 60-2844;

*Garvin v. Jennerson,* 20 Kan. 371.) The court offered to continue the case over the term so that the deposition would be available, but that did not suit the plaintiff. She demanded a continuance of one day, which was refused—presumably because the setting of other cases would not permit it. No error appears under this assignment.

Touching the deposition which was suppressed, it was defective because certain exhibits which were covered by the testimony of the deponent were not attached to it; but over the objection of counsel for defendant they were taken charge of by counsel for plaintiff. The record recites:

[COUNSEL FOR PLAINTIFF]: ". . . We offer in evidence what has been identified by the reporter here as plaintiff's exhibits 1, 2, 3, and 4, and will state to counsel at this time that these exhibits will be preserved and be produced at the trial of this case. I want to keep them in our files with the assurance that we will produce them at the trial of the case.

[COUNSEL FOR DEFENDANT]: "If the exhibits are to be offered in evidence, I contend they must be attached to the depositions, otherwise I object to their offer in evidence."

Unless there was a serious dispute about the genuineness of the exhibits we may concede that the trial court's ruling was somewhat technical; but it cannot be said to have been erroneous; and we have no means of determining how important the suppressed deposition was. Neither of the depositions was actually presented to the trial court. It never was apprised of their contents and neither are we.

The next error assigned relates to the instructions. In the course of the trial plaintiff abandoned all alleged grounds of negligence except the breach of a Missouri rule of law familiarly known as the "humanitarian doctrine," the substance of which is that every person must exercise due care for the safety of another person who is in peril or about to become imperiled, when he can do so without injury to himself or others; and such duty is imposed irrespective of the fact that the imperiled person may have got himself into his perilous position through his own fault.

Plaintiff does not argue that the trial court failed to include this Missouri rule of law in its instructions. Indeed, the rule was carefully and repeatedly stated in them. The complaint is that at the outset the court summarized the allegations of plaintiff's petition, from which plaintiff has a talking point to the effect that the jury was bound to infer that unless plaintiff proved "every material allegation in her petition necessary for a recovery by a preponderance" of the evidence, she could not recover. This point is hypercrit-

ical. The instructions explicitly and concretely stated the Missouri doctrine and that plaintiff was relying exclusively thereon, so that it must have been a plain and simple matter for the jury to apply it, and it cannot be fairly inferred that they were misled by the court's preliminary summary of the pleadings. Moreover, the objection now raised to the instructions was not made at the trial; and if the matter were more serious than it is, we cannot discern how reversible error could be predicated upon it, since no request for alteration, modification or amplification of the instructions was raised for the trial court to consider before the case went to the jury. In *Skaer v. Bank,* 126 Kan. 538, 268 Pac. 801, this court, in discussing the statute governing instructions to juries (R. S. 60-2909), said:

"The statute gives to counsel the right to inspect the instructions before they are given to the jury. If on inspection it is discovered that the instructions are not what counsel desires them to be, he has an opportunity to prepare special instructions to correspond with his wishes and submit them to the court with the request that they be given to the jury. Failure to do either of these things renders unavailing any complaint that the instructions were not as full and complete as they ought to have been." (p. 541.)

In *Williams v. Bank,* 140 Kan. 260, 36 P. 2d 84, it was said:

"The failure of the defendant to object to the instructions, as given, or to suggest modifications of them, bars him from complaining that additional instructions were not given, or of those given." (p. 263.)

Sundry other criticisms of the instructions are urged on our attention, but the rule of trial practice just discussed sufficiently disposes of them.

Plaintiff's next grievance relates to the failure of the court to submit special questions to the jury; but without extending this opinion by quoting the record it is clear that with the tacit consent of plaintiff special questions were submitted for the jury to answer if they found a verdict for the plaintiff, but if for the defendant they need not answer them. The record shows no objection to this disposition of the special questions and no error can be effectively based on this point.

Plaintiff's 17th grievance relates to the admission of testimony of a former college instructor who had turned salesman of automobiles and who testified that from experience he had learned how many feet a car will travel when its brakes are set at different speeds. No shadow of error appears in this testimony.

Plaintiff's final grievances are based on the admission of appellee's testimony that he *thought* he was traveling around 35 miles

an hour immediately prior to the accident; and because this question and its answer were allowed to stand over plaintiff's objection:

"Q. Do you know anything you might have done to stop the car after seeing the Willis St. Clair (in which plaintiff was a passenger) cross over in front of you at this point and striking it; do you know anything else you could have done you didn't do?

"A. No, sir, there was nothing I could do.

"A. There was nothing I could do, just turn and put on my brakes was all. He was so close upon me."

Neither on this incident nor on any other urged on our attention can this court discover anything approaching prejudicial error; and the judgment is therefore affirmed.